UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 11-1020
(10-0113-BLA)

_____

WEST VIRGINIA CWP FUND, as carrier for Olga Coal Company,

          Petitioner,

          v.

ELSIE L. STACY, surviving spouse of Howard W. Stacy;
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,

          Respondents.

--------------------

ASSOCIATION OF BITUMINOUS CONTRACTORS, INCORPORATED; OLD
REPUBLIC INSURANCE COMPANY,

          Amici Supporting Petitioner,

UNITED MINE WORKERS OF AMERICA; TIMOTHY CHRISTOPHER
MACDONNELL, Esq.,

          Amici Supporting Respondents.

_____

O R D E R

_____

          The Court amends its opinion filed December 7, 2011,

as follows:

          On page 2, attorney information section, line 6, the

name "Wendy L. Snyder" is corrected to read "Wendy G. Adkins."

                    For the Court – By Direction

                    /s/ Patricia S. Connor
                              Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WEST VIRGINIA CWP FUND, as
carrier for Olga Coal Company,
                    *Petitioner,*

v.

ELSIE L. STACY, surviving spouse
of Howard W. Stacy; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS,

                    *Respondents.*

ASSOCIATION OF BITUMINOUS
CONTRACTORS, INCORPORATED; OLD
REPUBLIC INSURANCE COMPANY,
          *Amici Supporting Petitioner,*

UNITED MINE WORKERS OF
AMERICA; TIMOTHY CHRISTOPHER
MACDONNELL, Esq.,
          *Amici Supporting Respondents.*

No. 11-1020

On Petition for Review of an Order of
the Benefits Review Board.
(10-0113-BLA)

Argued: October 25, 2011

Decided: December 7, 2011

Before TRAXLER, Chief Judge, and WILKINSON and
WYNN, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Traxler and Judge Wynn joined.

---

**COUNSEL**

**ARGUED:** Kathy Lynn Snyder, JACKSON KELLY, PLLC, Morgantown, West Virginia, for Petitioner. Ryan Christopher Gilligan, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia; Sean Gregory Bajkowski, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Wendy G. Adkins, JACKSON KELLY, PLLC, Morgantown, West Virginia, for Petitioner. Joseph E. Wolfe, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia, for Respondent Stacy. M. Patricia Smith, Solicitor of Labor, Rae Ellen James, Associate Solicitor, Maia S. Fisher, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Mary Lou Smith, HOWE, ANDERSON & STEYER, P.C., Washington, D.C., for Association of Bituminous Contractors, Amicus Supporting Petitioner. Mark E. Solomons, Laura Metcoff Klaus, GREENBERG TRAURIG, LLP, Washington, D.C., for Old Republic Insurance Company, Amicus Supporting Petitioner. Arthur Traynor, INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, Triangle, Virginia, for United Mine Workers of America, Amicus Supporting Respondent. Timothy C. MacDonnell, Micah P. S. Jost, Student Caseworker, Jacob L. Triolo, Student Caseworker, WASHINGTON AND LEE UNIVERSITY SCHOOL OF LAW, Black Lung Legal Clinic, Lexington, Virginia, for Timothy Christopher MacDonnell, Amicus Supporting Respondent.

## OPINION

WILKINSON, Circuit Judge:

This case involves a widow's claim for survivors' benefits under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901-944, as amended by the Patient Protection and Affordable Care Act ("PPACA"), Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010). The PPACA amendments revived Section 422(*l*) of the BLBA, 30 U.S.C. § 932(*l*), which provides that an eligible survivor of a miner who was receiving benefits at the time of his death is automatically entitled to survivors' benefits without having to establish that the miner's death was due to pneumoconiosis. Relying on amended § 932(*l*), the Benefits Review Board ("BRB") ruled that the widow, Elsie Stacy, was entitled to survivors' benefits. On appeal, petitioner West Virginia Coal Workers' Pneumoconiosis Fund subjects the PPACA's restoration provision to a variety of constitutional and statutory challenges. Finding no merit in these attacks, we now affirm.

### I.

### A.

The black lung benefits program was originally enacted in 1969 to provide benefits for miners totally disabled due to pneumoconiosis arising out of coal mine employment. Pneumoconiosis is a chronic lung disease or impairment arising out of such employment. *See* 20 C.F.R. § 718.201(a). The statute, now known as the Black Lung Benefits Act, also provides survivors' benefits for miners' dependents.

Congress has recalibrated the program's eligibility requirements for survivors several times since its inception. As initially enacted, the program required a survivor to prove entitlement by showing either that the miner's death was caused by pneumoconiosis or that the miner was totally dis-

abled by pneumoconiosis at the time of his death. *See* 30 U.S.C. § 901 (1976). In 1977, Congress introduced BLBA Section 422(*l*), 30 U.S.C. § 932(*l*), which provided that "[i]n no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under this title at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner." Black Lung Benefits Reform Act of 1977, Pub. L. No. 95-239, § 7(h), 92 Stat. 95, 100 (1978). Under this provision, the eligible survivors of a miner who had been awarded disability benefits on a claim filed during his lifetime were automatically entitled to survivors' benefits.

Congress significantly tightened the BLBA's eligibility requirements in 1981. For one thing, the 1981 amendments added limiting language to 30 U.S.C. §§ 922(a)(2) and 932(*l*) that effectively abolished automatic survivors' benefits going forward. Black Lung Benefits Revenue Act of 1981, Pub. L. No. 97-119, §§ 203(a)(1), 203(a)(6), 95 Stat. 1635, 1643-44 (1981). The amendments also restricted the availability of benefits for survivors of miners totally disabled by pneumoconiosis by adding similar limiting language to 30 U.S.C. § 921(a). *Id.* § 203(a)(5), 95 Stat. at 1644. Moreover, they removed from the BLBA's general purpose section, 30 U.S.C. § 901, language indicating that one purpose of the Act was to provide benefits to survivors of miners "who were totally disabled by [pneumoconiosis] at the time of their deaths . . . ." *Id.* § 203(a)(4), 95 Stat. at 1644. As a result of these amendments, survivors could generally only obtain benefits by proving that pneumoconiosis caused a miner's death. Finally, the 1981 amendments eliminated the "15-year presumption," BLBA Section 411(c)(4), 30 U.S.C. § 921(c)(4), a rebuttable presumption benefitting miners who were employed in an underground coal mine for 15 years or more. *Id.* § 202(b)(1)-(2), 95 Stat. at 1643.

In 2010, Congress once again recalibrated the BLBA's eligibility requirements by enacting Section 1556 of the

PPACA. *See* Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010). Section 1556(a) of the Act revived the 15-year presumption. Further, Section 1556(b) reinstated automatic survivors' benefits by removing from 30 U.S.C. § 932(*l*) the limiting language that had been added in 1981. The PPACA did not, however, eliminate the corresponding language from §§ 921(a) and 922(a)(2), nor did it alter the wording of § 901. Finally, Section 1556(c) of the PPACA provides the effective date for Sections 1556(a) and 1556(b), restricting their application to "claims filed . . . after January 1, 2005, that are pending on or after the date of enactment of this Act." *Id.* § 1556(c).

## B.

Howard Stacy mined coal in West Virginia for Olga Coal Company from 1975 until 1986. Shortly after leaving the mines, Mr. Stacy filed a claim for federal black lung benefits. The Department of Labor granted the claim, finding that Mr. Stacy was totally disabled as a result of pneumoconiosis arising from his coal mine employment. Petitioner—as insurer for Olga Coal Company—paid BLBA benefits to Mr. Stacy for 20 years until his death in January 2007.

Mr. Stacy's widow, Elsie Stacy, filed a claim for survivors' benefits on February 1, 2007. At the time she filed her claim, the applicable regulations required her to prove that pneumoconiosis caused, contributed to, or hastened her husband's death. *See* 20 C.F.R. § 718.205. Following a formal hearing, the ALJ ruled that Mrs. Stacy had failed to prove that her husband suffered from pneumoconiosis.[1] Accordingly, the ALJ denied the claim. Mrs. Stacy appealed the ALJ's denial to the BRB.

---

[1] The ALJ determined that petitioner was not collaterally estopped from arguing that Mr. Stacy did not suffer from pneumoconiosis because his claim had not been adjudicated by an ALJ, the BRB, or a court.

On March 23, 2010, while Mrs. Stacy's case was on appeal, the PPACA was enacted. Shortly after, Mrs. Stacy filed a motion with the BRB requesting that her case be remanded for a determination of benefits under the newly amended BLBA because (1) her husband was receiving benefits at the time of his death pursuant to a final award; (2) she had filed her claim after January 1, 2005; and (3) her claim was still pending on March 23, 2010, when the PPACA was enacted. *See* Pub. L. No. 111-148, § 1556(c), 124 Stat. 119, 260 (2010) ("The amendments made by this section shall apply with respect to claims filed . . . after January 1, 2005, that are pending on or after the date of enactment of this Act."). The Director, Office of Workers' Compensation Programs (the "Director") agreed that Mrs. Stacy was entitled to benefits under 30 U.S.C. § 932(*l*), as amended by the PPACA amendments.

Petitioner opposed Mrs. Stacy's motion, arguing that PPACA Section 1556 is unconstitutional and that the PPACA's reinstatement of automatic survivors' benefits does not apply to Mrs. Stacy's claim because the operative filing date for determining eligibility is the date the miner's claim was filed—not the date the survivor's claim was filed—and because the miner's claim here was filed before January 1, 2005, and was not pending on or after March 23, 2010.

On December 22, 2010, the BRB vacated the ALJ's decision and remanded Mrs. Stacy's claim for the entry of an award of benefits. Agreeing with the Director, the BRB held that the plain language of Section 1556(c) mandates the application of amended § 932(*l*) to "all 'claims' filed after January 1, 2005, that are pending on or after March 23, 2010," including survivors' claims. It also rejected petitioner's argument that retroactive application of the PPACA amendments violates the Due Process and Takings Clauses, and it declined to

hold the case in abeyance pending the resolution of other constitutional challenges to the PPACA. This appeal followed.[2]

## II.

We begin with petitioner's contention that retroactive application of the automatic survivorship provision to claims filed after January 1, 2005 violates substantive due process because Congress "did not provide any legitimate purpose" for making the legislation retroactive and arbitrarily chose January 1, 2005 as the operative filing date. Petitioner's Br. at 25-26. Legislative acts "adjusting the burdens and benefits of economic life" are presumed to be constitutional, however, and "the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). This is true even where that legislation is applied retroactively. *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984). Because retroactive application of amended Section 932(*l*) (the automatic survivorship provision) is hardly arbitrary and irrational, petitioner's substantive due process argument is unavailing.

---

[2]In its briefs, petitioner argued that if any portion of the PPACA—including the "individual mandate"—is declared unconstitutional, the PPACA amendments to the BLBA must also be declared invalid because they are not severable from the rest of the Act. Following briefing in this case, this court declined to hold any provision of the PPACA unconstitutional in two cases, *Virginia v. Sebelius*, 656 F.3d 253 (4th Cir. 2011) and *Liberty University, Inc. v. Geithner*, ___ F.3d ___, 2011 WL 3962915 (4th Cir. 2011). In light of these decisions, petitioner abandoned its non-severability claims at oral argument. However, even if the individual mandate were declared unconstitutional, we would uphold the validity of the BLBA amendments because "the normal rule is that partial, rather than facial, invalidation is the required course, such that a statute may . . . be declared invalid to the extent that it reaches too far, but otherwise left intact," *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006), and because the BLBA amendments have a stand-alone quality and are "fully operative as a law," *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 3161 (2010).

Our analysis is guided by *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976), where the Supreme Court rejected an argument that the BLBA, as amended in 1972, violated due process by imposing retroactive liability for benefits on coal mine operators. The *Usery* Court held that "the imposition of liability for the effects of disabilities bred in the past is justified as a rational measure to spread the costs of the employees' disabilities to those who have profited from the fruits of their labor—the operators and the coal consumers." *Id.* at 18.

A substantive due process violation requires that government have acted in an arbitrary manner. *Id.* at 15. That is hardly the case here. *Usery* made plain that it is not "arbitrary and irrational" for Congress to compel operators who have benefitted from a miner's labor in his productive years to care for that miner in his declining years and for his spouse or other eligible dependents after his death. Indeed, the wholly rational and legitimate purpose for applying amended § 932(*l*) retroactively is to compensate the survivors of deceased miners "for the effects of disabilities bred in the past." *Id.* at 18. Although Congress might well find on its own that the imposition of such costs on mine operators is excessive, the Constitution imposes no bar on Congress's ability to enact remedial and humanitarian legislation such as that challenged here.

Relying on *Usery*, the Third Circuit recently upheld amended § 932(*l*) against a due process challenge. *See B&G Constr. Co. v. Dir., OWCP*, ___ F.3d ___, 2011 WL 5068092 (3d Cir. 2011). The court in *B&G Construction* reasoned that

> Congress' decision automatically to extend benefits to eligible survivors regardless of whether a miner died due to the effects of pneumoconiosis represents a legislative choice to compensate a miner's dependents for the suffering they endured due to the miner's pneumoconiosis or as a means to provide a

miner with peace of mind that his dependents will continue to receive benefits after his death.

*Id.* at \*19. The Third Circuit continued, "We have no reason to override Congress' implicit determination that the choice was reasonable." *Id.* Therefore, the court concluded, "based on the [Supreme Court's] rationale in [*Usery*], we cannot say that it is irrational or arbitrary for Congress to extend survivors' benefit[s] to the dependents of miners who are receiving black lung benefits at the time of their death regardless of the cause of death." *Id.*

Similarly, the Seventh Circuit relied on *Usery* in rejecting a due process challenge to the PPACA's retroactive revival of the 15-year presumption, 30 U.S.C. § 921(c)(4). *See Keene v. Consolidation Coal Co.*, 645 F.3d 844 (7th Cir. 2011). The *Keene* court concluded that "the rational purpose for applying the 15-year presumption retroactively is to give miners and their survivors whose claims were recently filed a better shot at obtaining benefits." *Id.* at 849. While mine operators may believe that Congress imposed excessive financial burdens upon them, the proper forum for that argument is legislative, not judicial. Simply put, Congress is suited to assess programmatic costs and benefits in a way that courts are not.

The absence of arbitrariness is underscored by the measured approach Congress adopted in the automatic survivorship amendments. Far from arbitrarily ignoring the potential financial burden that it placed on coal operators, Congress mitigated the retroactive impact of Section 1556 by limiting its application to "claims filed . . . after January 1, 2005, that are pending on or after" March 23, 2010—the date the PPACA was enacted. Pub. L. No. 111-148, § 1556(c), 124 Stat. 119, 260 (2010). Consequently, operators must only pay automatic survivors' benefits for claims filed in or after 2005.

Although this limitation on § 932(*l*)'s retroactive application works to the benefit of coal mine operators, petitioner

argues that Congress's choice of January 1, 2005 as the cut-off date is arbitrary and that § 932(*l*) therefore violates due process. However, Congress's selection of a precise filing date is a classic line-drawing exercise uniquely within the competence of the legislative branch. The Supreme Court has squarely rejected the proposition that such routine line-drawing exercises are somehow constitutionally infirm. The Court has "never insisted that a legislative body articulate its reasons for enacting a statute. This is particularly true where the legislature must necessarily engage in a process of line-drawing. The task of classifying persons for [benefits] inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line . . . ." *See U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (internal citation omitted).

Petitioner also relies on *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998). That case arose out of a series of agreements between the United Mine Workers of America and coal operators establishing multiemployer health care funds. *Id.* at 504-11. Eastern was a signatory to every agreement executed between 1947 and 1964, but it ceased its coal mining operations in 1965. *Id.* at 516, 530. Almost a decade after Eastern had left the industry, the remaining parties agreed that the multiemployer funds would provide lifetime health benefits for retirees and their dependents. *Id.* at 509, 530. Congress subsequently passed the Coal Industry Retiree Health Benefit Act of 1992 (the "Coal Act"), which required certain coal operators—including Eastern—to contribute to a new multiemployer plan providing the promised lifetime coverage. *Id.* at 514, 517. The Supreme Court held the Coal Act unconstitutional as applied to Eastern — which had never agreed to provide lifetime benefits—but no single theory attracted a majority of the Court. *Id.* at 538.

Petitioner's reliance on *Eastern* is misplaced for two reasons. First, only one Justice in that case concluded that Eastern's due process rights were violated. *Id.* at 539-50

(Kennedy, J., concurring in the judgment and dissenting in part); *see Ass'n of Bituminous Contractors v. Apfel*, 156 F.3d 1246, 1254 (D.C. Cir. 1998) ("Justice Kennedy's concurrence in the judgment is of no help in appellant's efforts to cobble together a due process holding from *Eastern Enterprises*' fragmented parts."). Justice O'Connor—writing for a plurality of four—resolved the case under the Takings Clause and explicitly declined to address the due process claim, 524 U.S. at 538, and the four dissenting Justices concluded that neither the Takings Clause nor the Due Process Clause had been violated, *id.* at 553-54.

Second, both Justice O'Connor's plurality opinion and Justice Kennedy's concurrence in the judgment emphasized that Eastern's liabilities under the Coal Act—in addition to being extremely retroactive and expensive—were imposed to rectify a problem that Eastern had no part in creating. *Id.* at 537 (plurality opinion) (noting that Eastern's burden was "unrelated to any commitment that [Eastern] made or to any injury [it] caused"); *id.* at 550 (Kennedy, J., concurring in the judgment and dissenting in part) ("Eastern . . . was not responsible for [retired miners'] expectation of lifetime health benefits . . . created by promises and agreements made long after Eastern left the coal business."). In contrast, amended § 932(*l*) imposes liability proportional to the incidence of totally disabling pneumoconiosis among former Olga Coal Company employees, and thus "spread[s] the costs of the employees' disabilities to those who have profited from the fruits of their labor." *Id.* at 536 (plurality opinion).

Petitioner asserts that "[a]t minimum, *Eastern* stands for the proposition that retroactive legislation can fail to meet the requisite constitutional standards and may be struck down as invalid." Petitioner's Reply Br. at 18. However, petitioner offers no criteria or limiting principle; it simply argues that Congress can go too far. In the absence of some workable and principled line—and in light of the substantial differences between the liability imposed on petitioner and that imposed

in *Eastern*—we cannot conclude that retroactive application of § 932(*l*) violates substantive due process without inviting invalidation of all retroactive acts "adjusting the burdens and benefits of economic life." *Usery*, 428 U.S. at 15. Accordingly, we reject the claim that petitioner was deprived of its substantive due process rights.

## III.

Petitioner also argues that retroactive application of amended § 932(*l*) constitutes an unlawful taking of its property under the Fifth Amendment. We disagree. Because amended § 932(*l*) merely requires petitioner to pay money—and thus does not infringe a specific, identifiable property interest—the Takings Clause does not apply here.

In *Eastern*, five Justices rejected the theory that an obligation to pay undifferentiated, fungible money constitutes a taking. Justice Kennedy, in his opinion concurring in the judgment, disagreed with the plurality's conclusion that the Coal Act imposed an unconstitutional taking of property:

> Our cases do not support the plurality's conclusion that the Coal Act takes property. The Coal Act imposes a staggering financial burden on the petitioner, Eastern Enterprises, but it regulates the former mine owner without regard to property. It does not operate upon or alter an identified property interest, and it is not applicable to or measured by a property interest. The Coal Act does not appropriate, transfer, or encumber an estate in land (*e.g.*, a lien on a particular piece of property), a valuable interest in an intangible (*e.g.*, intellectual property), or even a bank account or accrued interest. The law simply imposes an obligation to perform an act, the payment of benefits.

524 U.S. at 540 (Kennedy, J., concurring in the judgment and dissenting in part). Likewise, the four dissenters concluded

that the Takings Clause was not implicated because "[t]he 'private property' upon which the Clause traditionally has focused is a specific interest in physical or intellectual property," and the case at hand involved "not an interest in physical or intellectual property, but an ordinary liability to pay money . . . ." *Id.* at 554 (Breyer, J., dissenting) (citations omitted).

In applying this splintered decision to takings challenges, this court has indicated that the conclusion reached by the majority of the Justices in *Eastern*—that an obligation to pay money cannot constitute a taking—is more authoritative than the plurality's conclusion. As we explained in *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 606 (4th Cir. 1999), "to the extent *Eastern Enterprises* worked any change with respect to takings jurisprudence," it is that liabilities like that imposed by the Coal Act "must be considered as a question of substantive due process rather than as a takings question because no identifiable property interest was infringed by the legislation."

Other circuits are in accord, and some have held that they are bound by the five Justices' conclusion that a monetary obligation does not implicate the Takings Clause. *See, e.g.*, *Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1054 (11th Cir. 2008) ("[T]akings analysis is not [appropriate] for the constitutional evaluation of an obligation imposed by Congress merely to pay money."); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1339 (Fed. Cir. 2001) (en banc) ("Thus five justices . . . in *Eastern Enterprises* agreed that regulatory actions requiring the payment of money are not takings. We agree with the prevailing view that we are obligated to follow the views of that majority."); *Unity Real Estate Co. v. Hudson*, 178 F.3d 649, 659 (3d Cir. 1999) ("[W]e are bound to follow the five-four vote against the takings claim in *Eastern*."); *Parella v. Ret. Bd. of the R.I. Employees' Ret. Sys.*, 173 F.3d 46, 58 (1st Cir. 1999) (upholding a statute against a Takings Clause challenge because "a majority of justices

found that the Takings Clause did not apply under the facts of *Eastern Enterprises*, because they concluded that a Takings Clause issue can arise only after a plaintiff's property right has been independently established.").

Thus, in light of *Eastern*, we hold that the mere imposition of an obligation to pay money does not give rise to a claim under the Takings Clause. If the Takings Clause applied to obligations of this sort, then it would seemingly apply to taxes and to "all statutes and rules that 'routinely creat[e] burdens for some that directly benefit others[.]'" 524 U.S. at 556 (Breyer, J., dissenting) (citation omitted). Given the views of a majority of Justices in *Eastern*, we decline to go down that road. Because amended § 932(*l*) only requires petitioner to pay money, it does not burden an identifiable property interest. Accordingly, petitioner's claim under the Takings Clause must fail.

Moreover, if we are somehow mistaken and Justice O'Connor's plurality opinion reflected the holding of *Eastern*, we would be compelled to reject petitioner's takings claim. The *Eastern* plurality explicitly limited its conclusion to "the specific circumstances of [that] case," *id.* at 537, and those circumstances are simply not present here. In determining that the Coal Act's application to Eastern effected an unconstitutional taking, the plurality emphasized that the Act "implicates fundamental principles of fairness underlying the Takings Clause" because it "singles out [Eastern] to bear a burden . . . unrelated to any commitment that [it] made or to any injury [it] caused . . . ." *Id.* Here, in contrast, the liability imposed by amended § 932(*l*) is proportional to the occurrence of totally disabling pneumoconiosis among former Olga Coal Company miners. Consequently, amended § 932(*l*) does not implicate the fundamental principles of fairness on which the *Eastern* plurality based its conclusion. Thus, even under the plurality's analysis, petitioner's takings claim falls short.

In the course of its takings argument, petitioner complains that it "could not have foreseen reinstatement of [the auto-

matic survivorship provision] through an amendment hidden within the universal healthcare bill." Petitioner's Reply Br. at 21. This argument misfires on two grounds. First, given that the black lung benefits scheme has been amended frequently over the years, and that legislation to reinstate automatic survivors' benefits has been introduced repeatedly, *see* Petitioner's Br. at 20, petitioner had ample notice of its potential liability for automatic survivors' benefits. As the Supreme Court has repeated, "'Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end.'" *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 227 (1986) (quoting *FHA v. The Darlington, Inc.*, 358 U.S. 84, 91 (1958)).

Second, and more fundamentally, petitioner's argument that the BLBA amendments only passed due to their "inclusion . . . in approximately 2,700 pages of healthcare legislation," Petitioner's Reply Br. at 27-28, threatens the separation of powers by inviting courts to scrutinize the process by which a coordinate branch of government goes about its business. Likewise, it invites every loser in a legislative fight to contest not only the constitutionality of Congress's final product, but the way that Congress went about enacting it. Such a plunge into the depths of Capitol Hill should be undertaken —if at all—only in the most extraordinary of circumstances, circumstances that are plainly not presented here. In sum, the difficulties with petitioner's view are evident and legion.

## IV.

We next consider petitioner's assertion that the PPACA's reinstatement of automatic survivors' benefits does not apply to Mrs. Stacy's claim because the operative filing date for determining eligibility is the date the *miner's* claim was filed —not the date the survivor's claim was filed. This court exercises de novo review over questions of law, including statutory interpretation. *See Westmoreland Coal Co. v. Cox*, 602

F.3d 276, 282 (4th Cir. 2010). The Director, as the administrator of the BLBA, is entitled to deference in his reasonable interpretation of the Act's ambiguous provisions. *See Betty B. Coal Co. v. Dir., OWCP*, 194 F.3d 491, 498 (4th Cir. 1999). When—as here—the Director's position is being advanced via litigation, it is "'entitled to respect' . . . but only to the extent that [it has] the 'power to persuade[.]'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Our analysis begins with the text of PPACA Section 1556, which contains three subsections. Section 1556(a) restores the 15-year presumption, which had been eliminated by the 1981 amendments. *See* 30 U.S.C. § 921(c)(4). Section 1556(b) reinstates automatic survivors' benefits by removing the limiting language from 30 U.S.C. § 932(*l*), which now provides that "[i]n no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under this subchapter at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner." 30 U.S.C. § 932(*l*). Finally, Section 1556(c) provides the effective date for both Sections 1556(a) and 1556(b), limiting their applicability to "claims filed . . . after January 1, 2005, that are pending on or after the date of enactment of this Act." Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010).

Construing these provisions, the Director concluded that the plain language of Section 1556(c) mandates its application to all claims filed after January 1, 2005 that are pending on or after March 23, 2010. Petitioner disagrees, arguing that because amended § 932(*l*) specifically provides that a survivor is not required to file a claim for derivative benefits, it would contravene the plain language of the statute to determine the applicability of this provision based on the date a survivor's claim was filed.

We find the Director's interpretation persuasive, as the definition of "claim" is not qualified by Section 1556(c). Instead,

the plain language of that section requires that amended § 932(*l*) apply to *all* claims filed after January 1, 2005, that are pending on or after March 23, 2010. Because Congress used the term "claims" without any qualifying language, and because both miners and their survivors may file claims under the BLBA, *see, e.g.*, 30 U.S.C. § 931(a); 20 C.F.R. § 718.205(a), the plain language supports the Director's position that amended § 932(*l*) applies to survivors' claims that comply with Section 1556(c)'s effective date requirements.

Although amended § 932(*l*) states that a survivor is not required to file a new claim for benefits, the conclusion petitioner draws from this language—that the operative date for determining eligibility cannot be the date the survivor's claim was filed—simply does not follow. Amended § 932(*l*) relieves eligible survivors of the obligation of proving that a miner died from pneumoconiosis; it does not *prohibit* survivors from filing a claim. Indeed, survivors will need to file some sort of "claim" in order to notify the Office of Workers' Compensation Programs of the miner's death and the survivor's current status. *See B&G Constr. Co. v. Dir., OWCP*, ___ F.3d ___, 2011 WL 5068092, at *7 n.12 (3d Cir. 2011) ("[S]urely a widow seeking benefits [under amended § 932(*l*)] must file something in order to receive them. . . . But what a widow does not have to do is establish that the miner died from pneumoconiosis."); *Pothering v. Parkson Coal Co.*, 861 F.2d 1321, 1328 n.13 (3d Cir. 1988) ("We do not read [§ 932(*l*)] as prohibiting filings for which there is an administrative need—such as providing the OWCP with notice of the miner's death or information regarding the survivor's relationship."). Thus, it does not contravene the plain language of amended § 932(*l*) to determine the applicability of Section 1556(c) based on the date of a survivor's claim.

Finally, the Director's interpretation, unlike petitioner's proposed reading, maintains consistency within Section 1556. The 15-year presumption, as reinstated by Section 1556(a), explicitly applies to both miners' and survivors' claims. *See*

30 U.S.C. § 921(c)(4) (stating that the provision applies to a "miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim[.]"). In the context of Section 1556(a), petitioner concedes, the word "claims" in Section 1556(c) refers to all kinds of claims. *See* Petitioner's Br. at 37-38. However, in the context of Section 1556(b), petitioner argues that the very same word only refers to miners' claims. *See id.* at 38. In contrast to petitioner's tortured reading, the Director's interpretation allows the word "claims" to mean the same thing—*all* claims—throughout Section 1556.

Because it is supported by the plain language of Section 1556(c), which does not qualify the definition of "claim," and because it maintains consistency within Section 1556, the Director's position—that amended § 932(*l*) applies to survivors' claims that comply with Section 1556(c)'s effective date requirements —is persuasive. Accordingly, Mrs. Stacy is derivatively entitled to survivors' benefits pursuant to § 932(*l*) because she filed her claim after January 1, 2005, the claim was pending on March 23, 2010, and her husband was receiving benefits under a final award at the time of his death.

V.

Finally, we consider petitioner's argument that 30 U.S.C. §§ 901, 921(a), and 922(a)(2)—which it claims conflict with § 932(*l*)—prevent Mrs. Stacy from receiving automatic survivors' benefits. Because petitioner made this contention for the first time at oral argument, we hold that it was waived. *See United States v. Bowles*, 602 F.3d 581, 583 n.1 (4th Cir. 2010) (noting that arguments not raised in the opening brief are waived). Even if we were to entertain this argument, however, we would have to reject it because amended § 932(*l*), as the most recent amendment to the BLBA, overrides any conflicting language in §§ 901, 921(a), and 922(a)(2).

Following the 1981 BLBA amendments, the automatic survivorship provision was no longer in effect, and survivors

could generally only obtain benefits by proving that pneumoconiosis caused a miner's death. Congress accomplished this result by amending various provisions of the BLBA—including §§ 901, 921(a), 922(a)(2), and 932(*l*). In 2010, Congress reinstated automatic survivors' benefits by enacting the PPACA, which removed from § 932(*l*) the limiting language that had been added by the 1981 amendments. The PPACA did not, however, revise the other provisions that had been similarly amended in 1981. Consequently, as described below, these provisions might be read to conflict with § 932(*l*).

Section 932(c)—a neighboring provision to § 932(*l*)—is designated "[p]ersons entitled to benefits," and it states that "[b]enefits shall be paid during such period by each such operator under this section to the categories of persons entitled to benefits under section 922(a) of this title . . . ." 30 U.S.C. § 932(c). Section 922(a)(2), in turn, still contains the limiting language that the PPACA removed from § 932(*l*):

> (a)  Schedules
>
> Subject to the provisions of subsection (b) of this section, benefit payments shall be made by the Secretary under this part as follows:
>
> . . . .
>
> (2)  In the case of death of a miner due to pneumoconiosis or, *except with respect to a claim filed under part C of this subchapter on or after the effective date of the Black Lung Benefits Amendments of 1981, of a miner receiving benefits under this part*, benefits shall be paid to his widow (if any) at the rate the deceased miner would receive such benefits if he were totally disabled.

30 U.S.C. § 922(a)(2) (emphasis added). Section 922(a)(2) provides that a widow shall receive benefits "[i]n the case of

death of a miner due to pneumoconiosis . . . ." However, "[i]n the case of death . . . of a miner receiving benefits," § 922(a)(2) restricts widows' benefits to claims filed before the effective date of the BLBA amendments of 1981. Thus, in contrast to amended § 932(*l*)—which provides that eligible survivors are not required to file a new claim for benefits if the miner was receiving benefits at the time of his death— § 922(a)(2) seems to indicate that widows must prove that pneumoconiosis caused the miner's death.

Like § 922(a)(2), § 921(a) still contains the limiting language that was added in 1981:

> The Secretary shall, in accordance with the provisions of this part, and the regulations promulgated by him under this part, make payments of benefits in respect of total disability of any miner due to pneumoconiosis, and in respect of death of any miner whose death was due to pneumoconiosis or, *except with respect to a claim filed under part C of this subchapter on or after the effective date of the Black Lung Benefits Amendments of 1981, who at the time of his death was totally disabled by pneumoconiosis.*

30 U.S.C. § 921(a) (emphasis added). Thus, § 921(a)—unlike § 932(*l*)—appears to force survivors to prove that the miner's "death was due to pneumoconiosis," because it limits benefits in respect to the death of any miner "totally disabled by pneumoconiosis" to claims filed before the effective date of the 1981 amendments.

Finally, § 901 still indicates that the purpose of the BLBA is "to provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners *whose death was due to such disease* . . . ." 30 U.S.C. § 901(a) (emphasis added). Notably, the PPACA did not reinstate the language—removed in 1981—stating that another purpose of the Act was to provide benefits to survi-

vors of miners "who were totally disabled by [the] disease at the time of their deaths . . . ." 30 U.S.C. § 901 (1976).

Our analysis of the apparent conflict between § 932(*l*) and §§ 901, 921(a), and 922(a)(2) is aided by *B&G Construction Co. v. Director, OWCP*, ___ F.3d ___, 2011 WL 5068092 (3d Cir. 2011), which addressed this very issue. In *B&G Construction*, the Third Circuit first noted that "[t]he only reasonable interpretation of section 932(*l*), standing alone, is that survivors of miners who had been determined to be eligible for black lung benefits at the time of their deaths are not required to file new claims for benefits, or to revalidate the claim of the deceased miners." *Id.* at *11. Given this interpretation, the court concluded that §§ 901, 921(a), and 922(a)(2) "are inconsistent with the language of section 932(*l*)" and that there is "no way to reconcile" the conflicting provisions of the BLBA. *Id.* at *13-14. Accordingly, the Third Circuit held that "amended section 932(*l*), being the last amendment of the Act and thus the latest legislation governing survivors' benefits, overrides the conflicting language . . . and entitles otherwise eligible survivors of a miner to receive benefits upon a miner's death without having to prove that pneumoconiosis caused the miner's death." *Id.* at *1; *see id.* at *14.

We find the Third Circuit's reasoning persuasive. Here, there is no dispute over the meaning of amended § 932(*l*); as petitioner concedes, it "provides that a survivor of a miner who was receiving federal black lung benefits at the time of his death[ ] is automatically entitled to survivor's benefits." Petitioner's Br. at 34. To the extent that §§ 901, 921(a), and 922(a)(2) require such a survivor to prove that pneumoconiosis caused the miner's death in order to receive benefits, § 932(*l*)—as the most recent amendment to the BLBA— "overrides the conflicting language[.]" *B&G Constr.*, 2011 WL 5068092, at *1; *see Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936) (Although "repeals by implication are not favored[,] . . . [w]here provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict

constitutes an implied repeal of the earlier one[.]"). Accordingly, even if petitioner had not waived this argument, §§ 901, 921(a), and 922(a)(2) would not prevent Mrs. Stacy from receiving automatic survivors' benefits under amended § 932(*l*).

## VI.

For the foregoing reasons, the judgment of the Benefits Review Board is

*AFFIRMED*.