**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-1294**

_____

UNION CARBIDE CORPORATION,

        Petitioner,

      v.

VIRGINIA RICHARDS, widow of Arlie Richards; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

        Respondents.

------------------------------

BLACK LUNG LEGAL CLINIC,

        Amicus Supporting Respondent.

_____

**No. 12-1978**

_____

PEABODY COAL COMPANY,

        Petitioner,

      v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; MARY ELLEN MORGAN, Widow of Don Morgan,

        Respondents.

------------------------------

BLACK LUNG LEGAL CLINIC,

Amicus Supporting Respondent.

On Petitions for Review of an Order of the Benefits Review Board. (11-0414-BLA, 11-0414-BLA-A, 10-5248-BLA, 11-0634-BLA)

Argued: March 21, 2013                    Decided: July 5, 2013

Before NIEMEYER, DAVIS, and DIAZ, Circuit Judges.

Petitions for review denied by published opinion. Judge Diaz wrote the opinion, in which Judge Niemeyer and Judge Davis joined.

**ARGUED:** Kathy Lynn Snyder, JACKSON KELLY, PLLC, Morgantown, West Virginia; Mark Elliott Solomons, GREENBERG TRAURIG, LLP, Washington, D.C., for Petitioners. Ryan Christopher Gilligan, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia; Barry H. Joyner, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Amy Jo Holley, JACKSON KELLY, PLLC, Morgantown, West Virginia, for Petitioner Union Carbide Corporation. Laura Metcoff Klaus, GREENBERG TRAURIG, LLP, Washington, D.C., for Petitioner Peabody Coal Company. M. Patricia Smith, Solicitor of Labor, Rae Ellen James, Associate Solicitor, Gary K. Stearman, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Joseph E. Wolfe, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia, for Respondents Virginia Richards and Mary Ellen Morgan. Timothy C. MacDonnell, Carney N. Simpson, Student Caseworker, Gordon Jenkins, Student Caseworker, Black Lung Legal Clinic, WASHINGTON AND LEE UNIVERSITY SCHOOL OF LAW, Lexington, Virginia, for Amicus Supporting Respondents.

DIAZ, Circuit Judge:

These consolidated cases involve claims for survivors' benefits under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 901 et seq., filed by Respondents Virginia E. Richards and Mary Ellen Morgan. In both cases, Department of Labor ("DOL") Administrative Law Judges ("ALJs") awarded the survivors' claims, and the DOL Benefits Review Board (the "Board") affirmed. Union Carbide Corporation and Peabody Coal Company, the coal mine operators responsible for payment of Respondents' benefits, petitioned for this court's review. Petitioners submit that principles of res judicata foreclose Respondents-- each of whom previously and unsuccessfully sought BLBA survivors' benefits--from relying on a recent amendment to the BLBA to pursue benefits again through a so-called "subsequent claim." We disagree. Because the amendment created a new cause of action that was unavailable to Respondents when they brought their initial claims, res judicata does not bar their subsequent claims. Accordingly, we affirm the Board's awards.

I.

In addition to lifetime disability benefits for coal miners, the BLBA provides survivors' benefits to certain of their dependents. The statute has been substantially amended over the years. Initially, a deceased miner's qualifying

3

dependents could obtain survivors' benefits either by showing that the deceased miner's death was caused by pneumoconiosis,[1] or by showing that the miner was totally disabled by pneumoconiosis at the time of his death. Survivors who proved their entitlement under the latter method were automatically entitled to benefits even if pneumoconiosis played no role in the deceased miners' deaths. See 30 U.S.C. § 922(a)(2) (1970). This automatic "derivative benefits" scheme was reinforced in the 1978 amendments to the BLBA, which enacted 30 U.S.C. § 932(*l*), providing: "In no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under this title at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner." Pub. L. No. 95-239, § 7(h), 92 Stat. 95, 100 (1978).

In 1981, Congress scaled back benefits under the BLBA, eliminating Section 932(*l*)'s provision of automatic derivative survivors' benefits. Consequently, a survivor filing a claim on or after January 1, 1982, could establish entitlement only by proving that the miner's death was due at least in part to

---

[1] The BLBA's implementing regulations define "pneumoconiosis" as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201(a).

4

pneumoconiosis. See Shuff v. Cedar Coal Co., 967 F.2d 977, 979 (4th Cir. 1992).

In 2010, the Patient Protection and Affordable Care Act ("ACA") reinstated Section 932(*l*)'s automatic survivors' benefits for claims filed after January 1, 2005, that were pending on or after the ACA's March 23, 2010, enactment date. Pub. L. No. 111-148, sec. 1556, § 932 ("Section 1556"), 124 Stat. 119, 260 (2010); W. Va. CWP Fund v. Stacy, 671 F.3d 378, 381-82 (4th Cir. 2011). Accordingly, survivors whose claims meet those temporal thresholds need no longer show that the miner's death was caused by pneumoconiosis; the claimant need only show that the miner was determined to be eligible to receive BLBA benefits at the time of his death. Section 1556 is silent as to whether survivors whose previous claims were denied may now receive benefits by filing "subsequent" claims under amended Section 932(*l*).

DOL's implementing regulations set forth the protocol for treatment of these "subsequent" claims--defined as claims filed "more than one year after the effective date of a final order denying a claim previously filed by the claimant under this part."[2] 20 C.F.R. § 725.309(d). The regulations provide:

---

[2] These regulations, which became effective on January 19, 2001, implement the pre-ACA version of Section 932(*l*), and thus still provide that survivors filing after 1981 may only recover
(Continued)

5

A subsequent claim shall be processed and adjudicated in accordance with the provisions [that govern original claims], except that the claim shall be denied unless the claimant demonstrates that one of the applicable conditions of entitlement . . . has changed since the date upon which the order denying the prior claim became final.

\*\*\*

(3) If the applicable condition(s) of entitlement relate to the miner's physical condition, the subsequent claim may be approved only if new evidence submitted in connection with the subsequent claim establishes at least one applicable condition of entitlement. A subsequent claim filed by a surviving spouse, child, parent, brother, or sister shall be denied unless the applicable conditions of entitlement in such claim include at least one condition unrelated to the miner's physical condition at the time of his death.

20 C.F.R. § 725.309(d).

Addressing the effect of res judicata on BLBA claims, a 1997 DOL comment to the proposed Section 725.309(d) observed that "the principles of claim preclusion are applicable to claims under the Act." 62 Fed. Reg. 3352 (proposed Jan. 22, 1997) (citing <u>Pittston Coal Grp. v. Sebben</u>, 488 U.S. 105, 122-23

upon showing that a miner's death was due to pneumoconiosis. 20 C.F.R. § 725.212, 725.218, 725.222. DOL has issued a notice of proposed rulemaking, in which it proposes to revise its regulations to reflect the ACA amendments. 77 Fed. Reg. 19468, 19478 (proposed Mar. 30, 2012) (to be codified at 20 C.F.R. pts. 718, 725). Notably, and consistent with its litigation position here, DOL proposes to revise Section 725.309(d) to provide for automatic entitlement on survivors' subsequent claims, notwithstanding previous denials. <u>Id.</u> at 19468.

(1988)).  In the context of subsequent claims, however, DOL clarified that "claim preclusion bars only an attempt to relitigate a cause of action that was previously resolved; it has no effect on the litigation of a cause of action which did not exist at the time of the initial adjudication."  Id. (citing Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 328 (1955)).

## II.

### A.

Arlie C. Richards worked as a coal miner for over thirty years and was awarded BLBA benefits in 1987.  Union Carbide paid his BLBA benefits until his death in January 1994.  Virginia Richards, Arlie's widow, filed her first claim for survivors' benefits in February 1994.  After protracted proceedings, an ALJ ultimately denied her claim on May 6, 2006, because she failed to prove that her husband's death was due in part to pneumoconiosis.  Mrs. Richards did not appeal that denial, but filed a second, subsequent claim for survivors' benefits in May 2009.  In October 2009, months before the ACA's enactment, a DOL district director denied that claim because it failed to demonstrate a change in any condition of entitlement, as is required of subsequent claims under Section 725.309(d)(3).  Mrs. Richards requested a hearing before an ALJ.

While that request was pending, Congress enacted the ACA, restoring automatic derivative survivors' benefits under Section 932(*l*). Upon a motion from the Director of the Office of Workers' Compensation Programs ("Director," the Federal Respondent in these cases), the ALJ acknowledged the change in law and issued a summary decision awarding benefits to Mrs. Richards, since her husband had been receiving benefits at the time of his death.

Union Carbide appealed to the Board, arguing--as it does in its instant petition--that Mrs. Richards's subsequent claim was barred by 20 C.F.R. § 725.309(d)(3) and principles of res judicata. In January 2012, the Board issued a split en banc decision affirming the ALJ's award of benefits. Richards v. Union Carbide Corp., 25 Black Lung Rep. (Juris) 1-31 (Ben. Rev. Bd. 2012) (en banc). The Board made four principal determinations. First, it held that the plain text of Section 932(*l*), as amended by Section 1556, authorizes its application to subsequent claims. Second, it held that Mrs. Richards had demonstrated a change in a condition of entitlement unrelated to her husband's physical condition, thus satisfying Section 725.309(d)(3). Third, the Board concluded that res judicata did not bar Mrs. Richards's subsequent claim because a determination of entitlement under Section 932(*l*) did not require relitigation of the prior finding that Mr. Richards's

8

death was unrelated to pneumoconiosis. Finally, the Board modified the benefit accrual date, clarifying that benefits for successful subsequent claims are payable from the month following the prior denial. Union Carbide timely petitioned for this court's review.

B.

Don Morgan worked as a coal miner for nineteen years and filed a claim for lifetime disability benefits in 1987. An ALJ approved his claim in 1991, and after more than a decade of proceedings, we affirmed Mr. Morgan's award of benefits in June 2004. Peabody Coal Co. v. Morgan, 98 F. App'x 966 (4th Cir. 2004). Mr. Morgan died months before that decision, in January 2004.

In May 2004, Mary Ellen Morgan, Don's widow, filed a claim for survivors' benefits. The district director initially approved her claim, but an ALJ denied benefits after determining that Mrs. Morgan had failed to prove that her husband's death was due to pneumoconiosis. Mrs. Morgan appealed, but the Board affirmed the denial in October 2008. Mrs. Morgan took no further action on her 2004 claim, and the Board's decision became final.

After Congress amended the BLBA via ACA Section 1556, Mrs. Morgan filed a second, subsequent claim. As he did in Richards, the Director moved for a summary decision awarding benefits.

9

Acknowledging the change in law, the ALJ granted the motion. Peabody, Mr. Morgan's former employer, appealed to the Board, arguing that Mrs. Morgan's subsequent claim was barred by 20 C.F.R. § 725.309(d) and principles of res judicata.[3]

The Board affirmed the award, relying on its decision in Richards.  Morgan v. Peabody Coal Co., BRB No. 11-0634, 2012 WL 2860525 (Ben. Rev. Bd. June 15, 2012) (unpublished).  Peabody timely petitioned for this court's review.

III.

The central issue before us is whether, in light of the ACA amendments to Section 932(*l*) of the BLBA, a final decision denying benefits on a prior claim bars a survivor from receiving benefits through a subsequent claim.  We consider this question of law de novo.  Stacy, 671 F.3d at 388.

A.

---

[3]  Peabody also contended that Section 1556 created an impermissible irrebuttable presumption that a miner's death was due to pneumoconiosis.  Peabody briefly raises this argument, which the Board rejected, on appeal.  We too reject it because the amendment does not raise the presumption Peabody alleges. As the Third Circuit recently explained, a miner's death is not presumed to be due to pneumoconiosis under amended Section 932(*l*); indeed, the cause of the miner's death is irrelevant in the context of automatic survivors' entitlements.  See B & G Constr. Co. v. Dir., OWCP, 662 F.3d 233, 254 (3d Cir. 2011).

10

Petitioners argue that Mrs. Morgan and Mrs. Richards are ineligible for automatic derivative survivors' benefits under amended Section 932(*l*). Because, unlike past amendments to the BLBA, Section 1556 does not expressly authorize departure from the traditional principles of res judicata, Petitioners believe that Respondents' previously denied claims should preclude them from bringing subsequent claims under amended Section 932(*l*). According to Petitioners, Section 1556 did not create a new cause of action, but rather merely created a new theory or method by which survivors may demonstrate entitlement. This change in law, Petitioners insist, does not negate the preclusive effect of Respondents' previously denied claims, particularly because the record evidence remains unchanged since the denial of the Respondents' initial claims.

Relatedly, Petitioners say that the Board erred in determining that Respondents' subsequent claims were not barred by 20 C.F.R. § 725.309(d)(3), which requires that a subsequent claim be denied unless the survivor can show a change in the conditions of entitlement unrelated to the decedent's physical condition.

Petitioners also contend that the Board's decision in these cases renders meaningless Congress's requirement that the claims be filed "after January 1, 2005" and pending on or after the ACA's March 23, 2010 enactment date. See Section 1556(c). By

11

allowing previously denied claimants to file subsequent claims under amended Section 932(*l*), Petitioners say the Board has created an end-run around Section 1556(c)'s filing limitations, which Congress imposed to mitigate the financial burden of Section 1556 on coal mine operators.

Defending the Board's holding, Respondents say that the plain language of Section 1556 and amended Section 932(*l*) permits awards on survivors' subsequent claims, since Section 1556 states, without qualification, that the amendment "appl[ies] with respect to claims filed" within Section 1556(c)'s time limitations. Fed. Resp't's Br. at 21 (quoting Section 1556(c)) (emphasis added by Federal Respondent). Respondents rely on our recent decision in Stacy, where we affirmed the applicability of amended Section 932(*l*) to a survivor's original claim. 671 F.3d at 388-89. In holding that amended Section 932(*l*) applies not only to miners' claims but also to those of survivors, we observed that "the plain language of that section requires that amended § 932(*l*) apply to all claims [that satisfy Section 1556(c)'s time limitations]." Id. at 388. Accordingly, since survivors may file subsequent "claims" under the BLBA, Respondents insist that their instant claims are encompassed by Section 1556.

Countering Petitioners' res judicata arguments, Respondents contend that Section 1556 did not merely change the process by

which survivors could prove their entitlement, but instead created a new, previously unavailable cause of action. Although Respondents acknowledge that they presented no new evidence since the denial of their initial claims, they maintain that their subsequent claims rely on facts different from the initial claims, thus rendering res judicata inappropriate. To wit, whereas Respondents' initial claims turned on whether pneumoconiosis caused the miners' deaths, Respondents point out that that fact is irrelevant to their subsequent claims under amended Section 932(*l*), which concern only whether the miners were eligible to receive benefits at the time of their deaths.

Finally, Respondents argue that their reading does not defeat the burden-mitigating time limitations in Section 1556(c), which they believe are still effectuated by the judicially implied requirement that claimants take some affirmative action to initiate the administrative application of Section 932(*l*) after January 1, 2005. Fed. Resp't's Br. at 24 (citing Stacy, 671 F.3d at 388-89). Thus, rather than being required to pay all previously denied survivors' claims where the miner died while receiving benefits, coal operators must pay only those where a surviving spouse has taken pains to submit a subsequent claim.

B.

13

Looking first to the text of Section 1556, we reject Petitioners' contention that the amendment does not apply to survivors' subsequent claims. As we explained in Stacy, "the plain language of [Section 1556] requires that amended § 932(*l*) apply to all claims [that satisfy Section 1556(c)'s time limitations]." 671 F.3d at 388. "Because Congress used the term 'claims' without any qualifying language," id., and because survivors whose claims were previously denied may file subsequent "claims" under the BLBA, see 20 C.F.R. § 725.309(d), the statutory text supports Respondents' position that amended Section 932(*l*) applies to all claims that comply with Section 1556(c)'s time limitations, including subsequent claims.

Petitioners are correct that, in contrast to previous BLBA amendments, Section 1556 does not explicitly indicate an intent to override the res judicata effect of previously denied claims. Compare Section 1556, with Pub. L. No. 95-239, § 11, 92 Stat. 95, 101 (Mar. 1, 1978) (directing the Secretary of Health, Education, and Welfare, upon a claimant's request, to review and apply amendments to previously denied claims), and Pub, L. No. 92-303, § 6, 86 Stat. 150, 156 (May 19, 1972) (same, only without the need for a claimant's request). But application of Section 1556 to subsequent claims does not require us to run roughshod over res judicata. Rather, res judicata is not implicated by Respondents' subsequent claims since entitlement

14

under Section 932(*l*), as revived by Section 1556, does not require relitigation of the prior findings that the miners' deaths were not due to pneumoconiosis.

In this case, Respondents easily satisfy 20 C.F.R. § 725.309(d)(3)'s requirement of showing a change in the conditions of entitlement unrelated to the decedent's physical condition. By restoring the derivative entitlement provisions of Section 932(*l*), Congress has effectively created a "change" establishing a new condition of entitlement unrelated to whether the miner died due to pneumoconiosis.

And just as Congress created a new condition of entitlement for purposes of Section 725.309(d), so too it created a new cause of action for purposes of res judicata.

By "precluding parties from contesting matters that they have had a full and fair opportunity to litigate," the doctrine of res judicata minimizes "the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (internal quotations omitted). "However, res judicata does not bar claims that did not exist at the time of the prior litigation." Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991). A party invoking res judicata must establish three elements: (1) a previous final judgment on the

15

merits, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits.  Id.

Identity of the cause of action--the only prong presently in dispute--exists if two claims "arise out of the same transaction or series of transactions or the same core of operative facts."  Pueschel v. United States, 369 F.3d 345, 355 (4th Cir. 2004).  While typically it is a new factual development that gives rise to a fresh cause of action, see, e.g., Lawlor, 349 U.S. at 328, changes in law can also have that effect.  For instance, "on rare occasions, when a new statute provides an independent basis for relief which did not exist at the time of the prior action, a second action on the new statute may be justified."[4]  18 James Wm. Moore et al., Moore's Federal Practice, ¶ 131.22[3] (3d ed. 2013); see also Clodfelter v. Republic of Sudan, No. 11-2118, 2013 WL 3069775, at *9 (4th Cir. June 20, 2013); Maldonado v. U.S. Atty. Gen., 664 F.3d 1369, 1379 (11th Cir. 2011).

Like Respondents, we recognize that the record evidence has not changed since the denial of the original claims and that the

---

[4] By contrast to a statutory change, a change in precedent generally provides no relief from res judicata, since it merely reflects an error in the prior decision.  See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).

only relevant change is one of law. Nevertheless, we conclude that the instant subsequent claims arise from operative facts that are separate and distinct from those underlying Respondents' initial claims, and therefore constitute new causes of action. Whereas Respondents' initial claims turned on whether the deceased miners died due to pneumoconiosis, these subsequent claims concern only whether the miners were determined to be eligible to receive black lung benefits at the time of their deaths--an entirely unrelated factual issue.

Meanwhile, the statutory change in law provides a previously unavailable basis for relief that justifies the instant claims, since res judicata does not bar claims that the parties have not had a "full and fair opportunity to litigate." Sturgell, 553 U.S. at 892. On this point, Petitioners cite the Supreme Court's decision in Sebben, 488 U.S. 105. Sebben involved the 1977 amendments to the BLBA, which imposed higher evidentiary standards on miners attempting to receive benefits, but which also required DOL to reopen and readjudicate certain pending and denied claims using the previously applicable, less restrictive standards. 488 U.S. at 110-11. DOL reopened these claims as required, but the claimants alleged that the agency failed to readjudicate them under the previously applicable, more lenient standards, as mandated by the amendment. Id.

17

Two classes of claimants brought suit in Sebben: the first had timely appealed the administrative denials of their reopened claims, while the second had not appealed and were seeking to reopen their finally determined claims for a third time. Id. at 112-13. Thus, to succeed, the second class needed to establish "not only a duty to apply less restrictive criteria than those [applied by DOL], but also a duty to reopen the final determinations." Id. at 122. Ultimately, although the Court agreed that DOL had improperly applied the more restrictive standards during their initial readjudications, it held that res judicata nevertheless barred the second class of claimants from reopening their finally (though wrongly) determined claims. Id.

Sebben does establish that res judicata can serve as a bar to BLBA claims, but it is inapposite here, where Respondents have not had any prior opportunity to litigate the cause of action giving rise to their subsequent claims. Unlike Respondents, who bring their derivative entitlement claims for the first time under amended Section 932(*l*), the second class of Sebben claimants had already received (albeit under the wrong evidentiary standard) the reopening and readjudication to which they were entitled under the 1977 amendments. Thus, the Supreme Court's refusal to grant the Sebben claimants a third bite at the apple merely reflects the well-settled principle that res judicata precludes relitigation of a final judgment on the

18

merits even if that judgment was wrong. See Moitie, 452 U.S. at 398. And in contrast to Sebben, where relitigation would have risked upsetting previously adjudicated claims and creating inconsistent judgments, litigation of Respondents' subsequent claims seeking benefits under amended Section 932(*l*)'s newly revived cause of action runs no such risk, since these claims were never previously adjudicated.

## C.

Petitioners attempt to divine congressional intent to exclude subsequent claims from the amendment's ambit by parsing a single post-enactment statement of the late Senator Robert C. Byrd, sponsor of Section 1556, who commented: "It is clear that [Section 1556] will apply to all claims that will be filed henceforth, including many claims filed by miners whose prior claims were denied, or by widows who never filed for benefits following the death of a husband." 156 Cong. Rec. S2083 (daily ed. March 25, 2010). As the Supreme Court has observed, "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation." Bruesewitz v. Wyeth LLC, 131 S. Ct. 1068, 1081 (2011). In any case, although Senator Byrd's statement may imply that the amendment excludes those widows who did file prior claims for benefits, it does not explicitly state as much. Meanwhile, his observation that the amendment applies to "all claims that will

19

be filed henceforth" can be read to encompass subsequent claims, and his description of the scope of the statute as "including" certain types of claims connotes that his selected examples were intended to be illustrative of the amendment's reach, not exhaustive. In short, any inference drawn from Senator Byrd's ambiguous post-enactment statement cannot overcome the plain text of the amendment, which indicates its application to "all claims," without qualification.

Finally, we address the concern that allowing Respondents' subsequent claims to proceed would remove the burden-mitigating time limitations Congress placed in Section 1556(c). As we observed in rejecting a due process challenge to Section 1556 in Stacy, the retroactive time limitations in Section 1556 represent Congress's "measured approach" to reinstating the automatic survivorship entitlements of Section 932(*l*). 671 F.3d at 384. Recognizing the potential financial burden the amendment might place on operators, "Congress mitigated the retroactive impact of Section 1556 by limiting its application to 'claims filed . . . after January 1, 2005, that are pending on or after' March 23, 2010--the date the [ACA] was enacted. Consequently, operators must only pay automatic survivors' benefits for claims filed in or after 2005." Id. (quoting Section 1556(c)) (citation omitted).

20

These limitations are not rendered meaningless by our holding here, since claimants seeking automatic entitlements must still take steps to assert their derivative rights. Claimants whose initial claims were denied before the ACA's January 2005 cutoff must affirmatively file a subsequent claim with the agency; meanwhile, the second limitation--requiring that the claims be pending on or after the ACA's March 2010 enactment--prevents DOL from having to sua sponte reopen claims filed after 2005 but denied before the amendment's enactment.

The Director attests to the practical effect of this regime, noting that only approximately 130 of the 1,040 eligible survivors have so far filed claims under the amended entitlement provisions. Fed. Resp't's Br. at 27 n.14. Thus, by requiring that DOL award the automatic entitlement only on claims (subsequent or otherwise) that have been filed since January 1, 2005, and are pending on or after March 23, 2010, the limitations continue to meaningfully mitigate the coal mine operators' financial burden.[5]

---

[5] As Respondents point out, the amendment's financial burden is further allayed by the Board's determination that automatic survivors' benefits on a subsequent claim are payable only from the month following the prior denial, rather than from the month of the miner's death. This decision represents an attempt to reconcile 20 C.F.R. § 725.503(c), which instructs that benefits are payable to an entitled survivor "beginning with the month of the miner's death," with 20 C.F.R. § 725.309(d)(5), which clarifies that "[i]n any case in which a subsequent claim is (Continued)

21

IV.

Under the plain language of Section 1556 and principles of res judicata, Mrs. Richards and Mrs. Morgan are entitled to survivors' benefits. In compliance with Section 1556(c)'s time limitations, Respondents filed their instant subsequent claims after January 1, 2005, and their claims were pending on and after March 23, 2010. Their deceased husbands were both determined to be eligible to receive BLBA benefits at the time of their deaths, and Petitioners do not deny that Mrs. Richards and Mrs. Morgan meet the dependency and relationship criteria for eligible survivors. Meanwhile, res judicata does not bar their claims, since Section 1556 created a new cause of action not available to them at the time they brought their initial claims. Respondents are therefore entitled to automatic derivative benefits under 30 U.S.C. § 932(*l*), and we accordingly deny Union Carbide's and Peabody's petitions for review.

PETITIONS FOR REVIEW DENIED.

---

awarded, no benefits may be paid for any period prior to the date upon which the order denying the prior claim became final." Reading those provisions together, the Board reasonably chose an accrual date that would provide successful subsequent claimants with meaningful benefits yet which, at the same time, would mitigate the burden to the operator and respect the validity of the earlier denial.

22