S. S. MITCHELL, ADMINISTRATOR OF W. T. McCUISTON, DECEASED, v.
CARL L. TALLEY.

(Filed 21 December, 1921.)

**1. Actions—Survival—Attachments—Statutes.**

The history of legislation as to attachments culminating in C. S., 798 (4), shows a legislative intent to broaden the right of this writ to make the same well-nigh coextensive with any well grounded demand for judgment *in personam*, and is sufficiently comprehensive to include the action for "causing the death of another by wrongful act, neglect, or default of another." C. S., 160.

**2. Same—Wrongful Death—Continuing Cause.**

C. S., 160, has been held to create a new cause of action only in the sense that at common law an action for the wrongful death did not survive to the personal representatives of the deceased; and the purpose of the statute was to withdraw claims of this kind from the effect and operation of the maxim *actio personalis moritur cum persona*, and to continue, as the basis of the claim of his estate the wrongful injury to the person resulting in death.

**3. Same—Defenses.**

A recovery for a wrongful death allowed by C. S., 160, depending upon the question of self-defense in case of willful injury, and on contributory negligence in case of "negligent act," or upon settlement of the damages in his lifetime by the one injured, shows that it was in the contemplation of the statute that the "injury to the person" should continue after his death to be a constituent part of the statutory action allowed to the personal representatives, and comes within the provisions of C. S., 798 (4), affording the remedy by attachment for the "injury to the person by negligent or wrongful act."

**4. Actions—Interveners—Attachment.**

An intervener in an action wherein attachment on defendant's property has been issued, and who claims a prior lien by reason of a former order of court in another and independent proceeding, becomes party to the present action and may not successfully attack the validity of the proceedings in attachment, and the question of priority is left to be determined in the present action.

**5. Same—Husband and Wife—Maintenance—Liens—Conflicting Claims.**

Where the wife has obtained an order for support from her husband, declared a lien on his property, C. S., 1667, in order for her to intervene in an action in another jurisdiction and claim priority over an attachment therein issued, it is necessary that she should show some valid service of process, or waiver by her husband in an appropriate civil action against him. Whether the lien of the wife will in any event prevail as against the lien of a valid attachment first levied in another court of equal or concurrent jurisdiction, *Quære?*

**6. Courts—Jurisdiction—Equal Jurisdiction—Superior Courts.**

One Superior Court has no power to revoke or modify the orders and judgments of another when the latter has acquired and holds jurisdiction.

APPEAL by plaintiff from *Webb, J.,* at the October Term, 1921, of GUILFORD.

Civil action to recover damages of the defendant for the willful and wrongful killing of plaintiff's intestate, who was a police officer, and at the time of his death was engaged in the discharge of his duty in undertaking to arrest defendant for violation of the prohibition law. Defendant escaped immediately after plaintiff's intestate was killed and personal service on defendant could not be made. At the time of issuing the summons, plaintiff, on proper affidavit, secured a warrant of attachment and same was levied on personal and real property of defendant in said county, including a levy on $3,111.60 on deposit in the National Bank of Greensboro. Service of summons by publication having been completed, a properly verified complaint was duly filed, and defendant having failed to answer, there was judgment by default and inquiry, and later, the case having been called in open court, the plaintiff moved that the court proceed to execute the inquiry pursuant to the judgment. And thereupon Ethel K. Talley, wife of the defendant, having intervened after said judgment by default was entered, moved to vacate the warrant of attachment, first, for that under the statute, no such warrant would properly lie in this case; and second, because the facts alleged as the basis for the application were untrue. And upon said motion the court being of opinion that the attachment would not lie in an action of this character, entered judgment that the same be vacated. The plaintiff then moved to be allowed to proceed to execute the inquiry, which was refused.

As a basis for the right of Ethel K. Talley to intervene in this cause, it was made to appear in a verified petition filed by the intervener that she was the wife of Carl Talley; that she had four living children of the marriage, aged six, four, and two years, and six months; that her husband was a fugitive from justice, had separated himself from the intervener, and was providing nothing for the support of herself and children; that the petitioner had made application to the Superior Court of Rockingham County, under C. S., 1667, to obtain alimony without divorce; and that on such, her application, the judge presiding in said county had ordered and decreed as follows:

"That the plaintiff is entitled to a reasonable subsistence from the property and earnings of defendant, and that the court hereby allots to plaintiff the dwelling-house and lot referred to and described in the complaint as a home for herself and said children, and further allots and assigns to her the sum of $100 a month as a reasonable subsistence for her and said children, which sum the defendant is required to pay out of his earnings or other moneys to plaintiff; and if defendant fails to

pay said sum on the first day of each and every calendar month, then the same may be collected by execution out of other property or funds of the defendant in the State.

"It is further adjudged that plaintiff have and recover of the defendant the sum of $300 as reasonable subsistence for her and said children from the date of the abandonment of them by the defendant until the date of the making of this order.

"And it is further ordered and adjudged that the defendant be and he is hereby required to cause all moneys on deposit in the Greensboro National Bank of Greensboro, North Carolina, assigned or transferred to the clerk of this court as trustee in order to secure compliance with this order.

"A certified copy of this order shall be served upon the Greensboro National Bank, to the end that it shall not pay out or permit the transfer of the funds in said bank, except as provided by order in this action, and the allowance to plaintiff is hereby secured by a lien which the court declares upon said fund."

No notice of the motion on which this judgment was entered was served on defendant Talley, and so far as appears, there has been no service by publication on said Talley of either the notice or the summons in said proceedings, nor has there been any order for such service, but the judgment in said proceedings was entered on allegations in the petition, duly verified, as to the kind and placing of the property, and that the defendant, Carl Talley, her husband, was a fugitive from justice, had abandoned and separated himself from the applicant, and was furnishing no support either for herself or infant children, and that the order applied for was absolutely essential to their subsistence.

From the rulings of the court, adversely affecting his interests, plaintiff, having duly excepted, appealed.

*King, Sapp & King* for plaintiff.
*A. W. Dunn and Brooks, Hines & Smith* for *Ethel K. Talley, intervener.*

HOKE, J. In the recent case of *Tisdale v. Eubanks,* 180 N. C., 153 and 155, the Court, in upholding the writ of attachment in an action for slander, had occasion to refer to the successive statutes controlling the matter, by which the lawful use of this writ has been continuously enlarged until under the latest amendment, C. S., 798, subsec. 4, the right is extended to actions for "any injury to the person, caused by negligence or wrongful act," and it was there said that the history of this legislation and this, the latest amendment to the law, showed an

evident intent on the part of the Legislature to broaden the right to this writ and make the same well-nigh coextensive with any well grounded demand for judgment *in personam.* Under this, the correct interpretation, we are of opinion that our statute appertaining to attachments, from the language used and the purpose and policy of the Legislature as evinced in these various amendments, is sufficiently comprehensive to include the action for "causing the death of another by wrongful act, neglect or default of another," as provided in ch. IV, sec. 160, of the Consolidated Statutes.

While we have repeatedly held, and the position is in accord with the authoritative cases on the subject elsewhere, that this law, commonly designated as the Lord Campbell's Act, has the effect of creating a new cause of action in the sense that such a suit could not be maintained at common law, it will appear from the better considered decisions construing the statute, both in England and in this country, that its purpose was to withdraw claims of this kind from the effect and operation of the maxim, *actio personalis moritur cum persona,* and that the action did not thereby lose its identity, but that the basis of such a claim continued to be the wrongful injury to the person resulting in death. Applying the principle, though there are cases to the contrary, it has been very generally held that if, in case of willful injury causing the death, the defendant was acting in his necessary self-defense, or in case of negligence, if the deceased at the time was guilty of contributory negligence, or if the injured party had given a release or had been settled with for the injury during his life, either by adjustment *inter partes* or by suit, under the statute no recovery could be had for the death, thus showing that in case of death following a wrongful injury there were not two causes of action contemplated, but one, and that the "injury to the person" continued to be a constituent and essential feature of the action provided for, and so, as stated, coming under the broad and comprehensive terms of our law of attachment affording the remedy for "injury to the person by negligence or any wrongful act." *Chemical Co. v. Edwards,* 170 N. C., 551; *Mich. Central R. R. v. Vreeland,* 227 U. S., 59-70; *Lincoln v. Detroit, etc., R. R.,* 179 Mich., 189; *Read v. Great Eastern,* 3 L. R., 867-68, p. 555; *Hecht v. R. R.,* 132 Ind., 507; *Littlewood v. Mayor,* 89 N. Y., 24; *Crape v. City of Syracuse,* 183 N. Y., 395; Tiffany, Death by Wrongful Act, sec. 124; 8 R. C. L., 786-790.

In *Chemical Co. v. Edwards, supra,* holding that a judgment for the wrong, duly paid to the injured party in his life, would bar any action to recover for the death, after quoting from the opinion of *Rapallo, J.,* in *Littlewood v. Mayor, supra,* it was said: "These views of the learned judge, arising chiefly from the language of the statute, derive strong

support from the suggestion that although the statute may be considered in some respects as creating a new right of action, it has its foundation in a single wrong." And in *Vreeland's case, supra, Associate Justice Lurton,* delivering the opinion, "But as the foundation of the right of action is the original wrongful injury to the decedent, it has been generally held that the new action is a right dependent on the existence of a right in the decedent. And in *Hecht v. Ohio Valley R. R.,* it was said, among other things: "Although some items of evidence may be competent, or even necessary, in one case and not in the other, and the method of proof may differ, still the action in either case is based on the negligence of the defendant in causing the same identical injury, and the damages in either case grow out of such negligence." .

It will be understood that we do not intend to qualify the principle upheld in our decisions, *Causey v. R. R.,* 166 N. C., 5, and others, that the statute commonly known as Lord Campbell's Act creates a new cause of action, but we are of opinion, and so hold, that the action it does create is so involved in and dependent upon the injury to the person which results in death as to bring the same within the broad and comprehensive language of our statute on attachment, authorizing the issuance of the writ. We do not consider it necessary or desirable to advert especially to the authorities cited by intervener tending to show that the wrongful causing of another's death is not included in the terms "injuries to the person." Some of them undoubtedly are in support of defendant's position, but the question, as a rule, was presented in facts differing from those of the instant case, and in the construction of statutes having terms of less comprehensive import and permitting other construction than our law as to writs of attachment.

While we have dealt somewhat at length with the ruling of the court vacating the writ, because, as the record now appears, the right of plaintiff to further continue the present suit is dependent on its validity, we must not be understood to hold that the intervener, Mrs. Talley, has the right to raise this question, coming into court and claiming the property held by it, she submits her case to the court's jurisdiction, and the only question open to her is whether she has an interest in the property superior to that conferred by the writ of attachment. In a case at the present term, *Feed Co. v. Feed Co., post,* 690, it was earnestly contended before us that an intervener could raise the question of the court's jurisdiction, and in disapproval of the position, *Stacy, J.,* delivering the opinion, said: "This jurisdictional question, arising from an alleged want of proper service, is sought to be raised by the intervener, after having taken the property under proper bonds for its forthcoming. We have held in *Forbis v. Lumber Co.,* 165 N. C., 403, and cases cited

MITCHELL *v.* TALLEY.

therein, that this position is not open to appellant. It is entitled to be heard only upon one issue, viz.: Does the property attached belong to it (the intervener)? *Bank v. Furniture Co.,* 120 N. C., 477."

As to the rights of the intervener and on the facts as they now appear in the record, her claim is based on a preliminary judgment of the Superior Court of Rockingham County, purporting to be under C. S., 1667, providing for an award of alimony without divorce, and we deem it not amiss to say that a perusal of this statute will disclose that the relief in such cases must be wrought by civil action, and for the proper maintenance of which there must be either personal service of summons on defendant within the jurisdiction or voluntary appearance by him, or there must be at least constructive service by publication, *Johnson v. Whilden,* 166 N. C., 104, and while the statute provides that an order for temporary support may be made in the cause without notice of such an application, where the defendant, having abandoned his wife, is absent from the State or is in parts unknown, etc., etc., and our authorities seem to hold that as against such a defendant an award of alimony may be made effective against his property situated within the State without personal service and without an attachment levied, *White v. White,* 179 N. C., 592, it does not necessarily follow that such a judgment would prevail as against the lien of a valid attachment first levied in another court of concurrent or equal jurisdiction, and in any event and as now advised the rights of the parties presented in this litigation must be determined in the present suit and not otherwise. One Superior Court has no power to revoke or modify the orders and judgment of another of which the latter has acquired and holds jurisdiction. *Bear v. Cohen,* 65 N. C., 511.

On the facts as now presented, this opinion will be certified that judgment vacating the attachment be reversed. The amount of plaintiff's damages be ascertained, and the issue then determined between the plaintiff and the intervener as to their respective rights and interests in the property levied on.

Reversed.