**Richard Eric TAYLOR, individually and as Executor for the Estate of Diane Grubb Taylor, Plaintiff,**

v.

**NORFOLK SOUTHERN RAILWAY COMPANY, Defendant.**

No. 1:12cv688.

United States District Court, M.D. North Carolina.

Signed Feb. 6, 2015.

William Marc Graham, Wallace and Graham, P.A., Salisbury, NC, John E. Guerry, III, Motley Rice LLC, Mt. Pleasant, SC, for Plaintiff.

David A. Damico, Burns White.LLC, Pittsburgh, PA, John S. Buford, Brooks Pierce McLendon Humphrey & Leonard, LLP, Greensboro, NC, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

THOMAS D. SCHROEDER, District Judge.

This is a damages action that follows a prior personal injury action arising from the same alleged asbestos exposure but was dismissed for failure to timely substitute a personal representative upon the death of Plaintiff's decedent. Defendant Norfolk Southern Railway Company ("NSRC") moves for judgment on the pleadings, arguing that the dismissal of the prior action under Rule 25 of the Federal Rules of Civil Procedure acts as res judicata against the present claims it contends arise out of the same transactions and core of operative facts. (Doc. 18.) For the reasons set forth below, the motion will be granted and the case will be dismissed.[1]

---

1. NSRC's subsequently filed motion for sum-     mary judgment (Doc. 20) and Mr. Taylor's

## I. BACKGROUND

The background of this case unfolded over many years and concerns wrongs from asbestos exposure allegedly committed half a century ago. It spawned two lawsuits, each of which was originally filed in a North Carolina trial court, removed to federal district court, and transferred by the Judicial Panel for Multidistrict Litigation ("JPML") to the Eastern District of Pennsylvania, *In re Asbestos Products Liability Litigation*, MDL No. 875. The first of these cases, filed in 2010, was ultimately dismissed, and the second is the present lawsuit.

### A. The 2010 Lawsuit

On October 28, 2010, Mr. Richard Eric Taylor and Mrs. Diane Grubb Taylor, husband and wife, filed a complaint in a North Carolina trial court against Defendant NSRC. (Doc. 18–1, "2010 Complaint.") Mrs. Taylor brought claims against NSRC for her personal injuries due to asbestos exposure, while Mr. Taylor brought a derivative claim for loss of consortium.[2] NSRC removed the case to the United States District Court for the Western District of North Carolina. On January 11, 2011, the JPML transferred the case to the Eastern District of Pennsylvania, where it was consolidated for pretrial proceedings in MDL No. 875.

On April 24, 2011, Mrs. Taylor died, and on May 5, 2011, Mr. Taylor was appointed

executor of her estate.[3] (Compl. ¶ 3.) On May 26, 2011, Mr. Taylor filed a Statement of Death of a Party, noticing her death to the district court and NSRC. Suggestion of Death, *Taylor v. Norfolk S. Ry. Co.*, No. 2:11–cv–60075 (E.D.Pa. May 26, 2011), ECF No. 15. On October 27, 2011, Mr. Taylor moved to substitute himself for Mrs. Taylor, as the personal representative of her estate, and to amend the complaint by adding a claim for wrongful death.

Mr. Taylor's motion to substitute was untimely. Under Federal Rule of Civil Procedure 25(a)(1), when a party dies, a substitution must be made "within 90 days after service of a statement noting the death." The motion to substitute was therefore due on August 24, 2011, making Mr. Taylor's October 27 filing over a month late. *See* Order, *Taylor v. Norfolk S. Ry. Co.*, No. 2:11–cv–60075 (E.D.Pa. May 29, 2012), ECF No. 44. Finding that the motion to substitute was inexcusably tardy, and given the failure to file a timely motion for an extension of time, the district court dismissed the entire case. *See id.* Mr. Taylor moved the court to reconsider the dismissal, but the court denied the motion over a year later. Order, *Taylor v. Norfolk S. Ry. Co.*, No. 2:11–cv–60075 (E.D.Pa. October 4, 2013), ECF No. 47. Mr. Taylor did not appeal these rulings. (Doc. 19 at 4.)

---

motion to partially dismiss household expenses (Doc. 24) need not be reached.

2. Mrs. Taylor's claims sounded in negligence (first cause of action), premises liability (second cause of action), "take home exposure" (third cause of action), and punitive and exemplary damages (fourth cause of action); Mr. Taylor claimed loss of consortium (fifth cause of action). (Doc. 18–1.)

3. Mr. Taylor also describes his representative capacity as one of "personal representative"

of Mrs. Taylor's estate. Under North Carolina's Wrongful Death Act, "only the 'collector of the decedent' or the personal representative—i.e., the administrator of an intestate, or the executor of one who dies testate—may institute an action for wrongful death; and he does so as the representative of the estate." *Bowling v. Combs*, 60 N.C.App. 234, 298 S.E.2d 754, 756 (1983). The term "personal representative" includes both executors and administrators. N.C. Gen.Stat. § 28A–1–1(5).

## B. The Current Lawsuit

On June 8, 2012, a few days before Mr. Taylor filed his motion for reconsideration, he filed the present action in a different North Carolina trial court, and NSRC removed the case to this court. In this complaint, Mr. Taylor brought Mrs. Taylor's prior personal injury claims now as apparent survival claims, his own claim for loss of consortium in his individual capacity and, as executor of Mrs. Taylor's estate, a claim for wrongful death predicated on Mrs. Taylor's personal injury claims from the first lawsuit.[4] (Doc. 5.) On August 27, 2012, the JPML transferred the case to MDL No. 875. (Docs. 11, 12.) Over a year later, on March 14, 2014, the JPML remanded the case to this court. (Doc. 15.) On April 30, 2014, NSRC filed the present motion for judgment on the pleadings, contending that the dismissal of the 2010 lawsuit acted as res judicata of the claims in this action. (Doc. 18.) The motion has been fully briefed (Docs. 19, 23, 26) and is ready for resolution.

## II. ANALYSIS

### A. Standard of Review

NSRC moves for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. The standard of review governing motions for judgment on the pleadings is the same as that employed on motions to dismiss for failure to state a claim under Rule 12(b)(6). *Drager v. PLI-VA USA, Inc.,* 741 F.3d 470, 474 (4th Cir.2014). To survive either motion, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173

L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A motion under Rule 12(c) "tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager,* 741 F.3d at 474 (citing *Butler v. United States,* 702 F.3d 749, 752 (4th Cir. 2012)).

In adjudicating a motion under Rule 12(c), the court may consider the complaint, the answer, and any documents incorporated by reference into these pleadings. *Mendenhall v. Hanesbrands, Inc.,* 856 F.Supp.2d 717, 724 (M.D.N.C.2012). Documents attached to an answer or a motion to dismiss can only be considered if they were integral to and explicitly relied on in the complaint, and if plaintiffs do not dispute their authenticity. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir.2004). Furthermore, when considering a motion to dismiss on grounds of res judicata, the court "may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Q Int'l Courier, Inc. v. Smoak,* 441 F.3d 214, 216 (4th Cir.2006). In this case, no party has shown a disputed issue of fact concerning the prior lawsuit. Therefore, the court will take judicial notice of the litigants' filings and the court's orders in the prior lawsuit.

---

4. The current complaint alleges negligence (first cause of action), premises liability (second cause of action), "take home exposure" (third cause of action), gross negligence—willful, wanton, and reckless conduct (fourth cause of action), loss of consortium (fifth cause of action), and wrongful death action pursuant to N.C. Gen.Stat. § 28A–18–2 (sixth cause of action). (Doc. 5.)

## B. Background North Carolina Law

While federal law provides the framework for analyzing the motion before the court, North Carolina's law on survivorship and wrongful death under which the two lawsuits' claims are brought are central to its resolution.

Survivorship and wrongful death claims are each created by statute. Under N.C. Gen.Stat. § 28A–18–1(a), a decedent's right to prosecute or defend an action survives the decedent's death, with the right to sue or defend surviving only for the personal representative of the decedent's estate. This survivorship statute reverses the common law rule that claims abate upon death and simply permits the personal representative to step into the decedent's shoes to prosecute the decedent's cause of action. A judgment entered in a survivorship action "is an asset of the decedent's estate." *State Auto Ins. Co. v. Blind,* 185 N.C.App. 707, 650 S.E.2d 25, 29 (2007). Survivorship actions can be affected by the statute of limitations. If the statute of limitations for the underlying claim has expired when the decedent dies, the survivorship action is barred. *See* N.C. Gen.Stat. § 28A–18–1(a) (preserving rights to defend against claims of decedent to claims made by decedent's personal representative); *Camper v. Manning,* No. 2:11CV157, 2011 WL 2550820, at *4 (E.D.Va. June 27, 2011) (applying North Carolina law and holding that statute of limitations defense could be raised against personal representative as it could have been raised against decedent). But if the decedent dies before the underlying claim expires, the personal representative may bring the survivorship claim after the running of the underlying statute of limitations, so long as the claim is brought within one year of the death. N.C. Gen.Stat. § 1–22.

A wrongful death claim is a "distinct and separate" cause of action created by N.C. Gen.Stat. § 28A–18–2. *Dunn v. Pac. Employers Ins. Co.,* 332 N.C. 129, 418 S.E.2d 645, 648 (1992). The cause of action accrues upon the decedent's death and remedies misconduct causing death specifically. *See Raftery v. Wm. C. Vick Const. Co.,* 291 N.C. 180, 230 S.E.2d 405, 407 (1976). As in survivorship claims, only the personal representative can bring a wrongful death claim. N.C. Gen. § 28A–18–2(a). Similarly, wrongful death remedies include compensation that would be owed the decedent, had he or she lived. *Id.* § 28A–18–2(b)(1)–(2). But unlike survivorship claims, wrongful death claims allow much broader recoverable damages for those the decedent has left behind as a result of the death, including reimbursement for the decedent's funeral expenses, the loss of decedent's income, and the loss of the decedent's society and companionship. *See id.* § 28A–18–2(b)(3)–(4). And again unlike survivorship claims, any recovery becomes not an asset of the estate, but is held in trust for the beneficiaries designated by the Intestate Succession Act. N.C. Gen. Stat. § 28A–18–2(a); *Brown v. S. Ry. Co.,* 202 N.C. 256, 162 S.E. 613, 617 (1932). To come within the statute of limitations, an action for wrongful death must be filed within two years of the decedent's death, and, on the date of the death, the decedent's underlying claim must not have been barred by the statute of limitations for bodily injury. *Dunn,* 418 S.E.2d at 647.

Survivorship and wrongful death actions, though technically separate, bear an important relationship to one another. If both are brought in one complaint, they should be "stated separately," and if they are brought in separate actions, they should be "consolidated for trial." *Bowen v. Constructors Equip. Rental Co.,* 283 N.C. 395, 196 S.E.2d 789, 807 (1973). But

just because the claims are separate and permit overlapping damages does not mean that a defendant will be subjected to double damages for the same wrongful conduct. *See id.; Hoke v. Atl. Greyhound Corp.*, 226 N.C. 332, 38 S.E.2d 105, 109–10 (1946). A wrongful death claim depends upon the viability of a decedent's personal injury claim (which becomes a survivorship claim upon death). *See* N.C. Gen.Stat. § 28A–18–2(a) (providing that wrongful death claim exists only where decedent would have had a personal injury claim "if the injured person had lived"); *Abney v. Coe*, 493 F.3d 412, 421 n. 2 (4th Cir.2007) (noting same); *Nelson v. United States*, 541 F.Supp. 816, 818 (M.D.N.C.1982) ("The wrongful death action exists if and only if the decedent could have maintained an action for negligence or some other misconduct if she had survived.... The death is not the operative fact upon which liability rests.").

█ Given this dependent relationship and the fact that the Wrongful Death Act both encompasses and surpasses the recovery on a survivorship claim, a survivorship claim will commonly give way to the wrongful death claim, with the latter providing the exclusive remedy for the decedent's injuries. For example, when a defendant has caused a decedent injuries that ultimately result in death, any survivorship claim merges into the wrongful death claim, with the latter providing the "only remedy." *Bolick v. S. Ry. Co.*, 138 N.C. 370, 50 S.E. 689, 690 (1905); *accord Blind*, 650 S.E.2d at 29 ("[W]e hold that when a single negligent act of the defendant causes a decedent's injuries and those injuries unquestionably result in the decedent's death, the plaintiff's remedy for the decedent's pain and suffering and medical expenses lies only in a wrongful death claim. Such claim is 'encompassed by the wrongful death statute' and 'must be asserted under that statute.'" (quoting *Christenbury v. Hedrick*, 32 N.C.App. 708, 234 S.E.2d 3, 5 (1977))); *McDonald v. Suggs*, No. 5:07–CV–339–D, 2008 WL 2129860, at *5 (E.D.N.C. May 20, 2008) ("[W]hen a survival action seeks damages that are recoverable under the WDA [Wrongful Death Act], the survival action must be dismissed.").

█ But when it is alleged that a decedent suffered personal injuries and death that resulted from different causes, the personal representative can plead survivorship and wrongful death claims in the alternative. *Alston v. Britthaven, Inc.*, 177 N.C.App. 330, 628 S.E.2d 824, 826–27, 831 (2006) (explaining that there was a "viable alternate explanation" for nursing home resident's death (e.g., Alzheimer's disease), besides the nursing home's conduct that caused some pre-death injuries); *cf. Blind*, 650 S.E.2d at 29 (finding that motorist's pain and suffering and medical expenses were both "unquestionably" caused by the same negligent conduct of another driver). When the death and pre-death injuries have "viable alternate" causes, the jury must first answer whether the defendant's "wrongful act caused decedent's death." *Alston*, 628 S.E.2d at 832. If the jury determines it did, the jury must determine whether the plaintiff can recover for wrongful death only. *Id.* But if the jury finds that the defendant did not cause the decedent's death, the jury must determine the survivorship action, i.e., whether the defendant caused the decedent's pre-death injuries and the degree of the decedent's damages excluding death. *Id.*

█ Under North Carolina law, therefore, when a defendant's conduct causes both injury and death, enabling both survivorship and wrongful death claims to be brought, the claims should be brought together, or else a separate judgment on one claim will preclude the other.

*See id.* at 831. Thus, a judgment on a survivorship claim will preclude a judgment on a wrongful death claim, even though the latter remedies a greater array of injuries, because the damages for both claims result "from a single wrong." *Id.* Because survivorship actions claim the same harm as a personal injury action, the same rule applies to actions taken by the decedent during his or her lifetime on the underlying personal injury claim. Thus, a judgment on a personal injury claim during a plaintiff's lifetime will act as a complete bar [5] against survivorship and wrongful death claims arising from the same conduct but brought after his death, because the personal injury, wrongful death, and survivorship claims all have their "foundation in a single wrong." *Edwards v. Interstate Chem. Corp.*, 170 N.C. 551, 87 S.E. 635, 635–36 (1916). This is true even if the personal injury claim brought during the decedent's life was unsuccessful. *See id.* at 636 ("If the deceased, in his lifetime, has done anything that would operate as a bar to a recovery by him in damages for the personal injury, this will operate equally as a bar in an action by his personal representative for his death." (quoting Francis B. Tiffany, *Death by Wrongful Act* § 124 (2d ed.1913))).

North Carolina's rules as to the interplay between personal injury, survival, and wrongful death actions are not unique but rather mirror that of the majority of States. *See Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 769 (Mo.Ct.App.2008) (citing *Edwards* ), and the *Restatement of Judgments, see Restatement (Second) of Judgments* § 45(1) (1982) (providing that a survival action is precluded if the first action proceeded to

judgment either "for or against the injured person before he died"), *id.* § 46 (providing the same for wrongful death claims).

With this background in mind, the court now turns to an analysis of the question presented in this case: whether the dismissal in the 2010 Lawsuit acts as res judicata against the claims in the current action.

## C. Res Judicata

■■■■ Res judicata, also known as claim preclusion, prevents parties from raising claims or defenses in a subsequent lawsuit that were or could have been raised in a prior lawsuit between them. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir.2004). When, as here, one federal court sitting in diversity considers the preclusive effect of a judgment rendered by another federal court sitting in diversity, "the federal common law of res judicata should be applied to protect the integrity of federal judgments, even though a decision is based on state law." *In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985*, 861 F.2d 814, 816 (5th Cir.1988); *accord Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir.1986). However, when res judicata implicates "an important question of state law such as privity," also at issue here, federal courts apply state law to determine preclusion. *Harnett*, 800 F.2d at 1313 (citing *Restatement (Second) of Judgments* § 87 cmt. b (1982)).

■■■■ Under federal common law, the party asserting res judicata must demonstrate three elements: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the

---

**5.** Although using the terms merger and bar, the North Carolina Supreme Court was employing principles more commonly known today as res judicata and claim preclusion. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *see generally* 18 Charles A. Wright et al., Federal *Practice and Procedure* § 4402 (2d ed.2002).

earlier and later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel,* 369 F.3d at 354–55 (citing *Nash Cnty. Bd. of Educ. v. Biltmore Co.,* 640 F.2d 484, 486 (4th Cir.1981)). Only the second and third elements are disputed in this case, because Mr. Taylor concedes that the earlier case reached a final judgment on the merits. (*See* Doc. 23 at 3.)[6]

### 1. Identity of the Causes of Action

#### a. Same Transaction Test

■■■ The parties dispute whether the causes of action in the present case are the same as those in the prior case. The Fourth Circuit has consistently articulated a clear rule to determine the identity of claims for res judicata purposes, adopted from the *Second Restatement of Judgments* § 24: There is sufficient identity in the causes of action when claims "arise out of the same transaction or series of transactions, ... or the same core of operative facts." *In re Varat Enterprises, Inc.,* 81 F.3d 1310, 1316 (4th Cir.1996) (citations omitted); *accord Harnett,* 800 F.2d at 1314. This is true even if the claims "involve different harms or different theories or measures of relief." *Harnett,* 800 F.2d at 1314.

The determination is made pragmatically, considering factors such as "whether the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit." *Restatement (Second) of Judgments* § 24(2). If it were not, the court "would allow parties to frustrate the goals of res judicata through artful pleading and claim splitting given that '[a]

single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.' " *Pueschel,* 369 F.3d at 355 (quoting *Kale v. Combined Ins. Co. of Am.,* 924 F.2d 1161, 1166 (1st Cir.1991)). The court looks not just to the claims asserted in the earlier lawsuit, but to all claims that could have been brought. *Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983); *In re Varat,* 81 F.3d at 1315. To preclude claims not brought earlier, the court need only determine that they were "available" to the plaintiff in the first action. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.,* 556 F.3d 177, 210–11 (4th Cir.2009).

Mr. Taylor argues that res judicata cannot bar his wrongful death claim on account of a terminated prior personal injury action brought during his decedent's lifetime because under North Carolina law they are different causes of action. (Doc. 23 at 7.) In support, he relies on the North Carolina Supreme Court's passage in *Dunn,* 418 S.E.2d at 648, that "[t]he claim for wrongful death is distinct and separate from the claim for bodily injury ... [and][t]he only relation between the two is that both the personal injury and resulting death were allegedly caused by the same wrongful conduct." (Doc. 23 at 7.) As is apparent from the preceding discussion, however, the difficulty with this argument is that it ignores applicable North Carolina law and the governing federal standard of the same transaction test.

---

**6.** Under Rule 41(b), an involuntary dismissal, "except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19[,] operates as an adjudication on the merits," unless the dismissal order states otherwise. The Taylors' earlier suit was dismissed under Rule 25(a), which is not an explicit exception, and the order did not otherwise

note that the dismissal was without prejudice. Order, *Taylor v. Norfolk S. Ry. Co.,* No. 2:11–cv–60075 (E.D.Pa. May 29, 2012), ECF No. 44 (attached in this case as Doc. 18–2). Therefore, the dismissal order constituted an adjudication on the merits for res judicata purposes. *See Russell v. City of Milwaukee,* 338 F.3d 662, 667 (7th Cir.2003).

In general, a decedent's claim for personal injury and her estate's claim for wrongful death are part of the same transaction or occurrence because,

apart from the measure of damages, recovery for wrongful death in North Carolina depends upon the same proof of actionable negligence or misconduct under the general rules of tort liability which would apply to an action strictly for personal injury. The wrongful death action exists if and only if the decedent could have maintained an action for negligence or some other misconduct if she had survived. Hence, although a wrongful death action may be a distinct cause of action from one for negligent infliction of personal injury, the theory or theories of liability and the operative facts from which liability arises are not different. . . . The death is not the operative fact upon which liability rests.

*Nelson*, 541 F.Supp. at 818 (citations omitted), *cited approvingly by DiDonato v. Wortman*, 320 N.C. 423, 358 S.E.2d 489, 491 (1987) ("In plain English, an action for wrongful death exists if the decedent could have maintained an action for negligence or some other misconduct if he had survived."). Although North Carolina's Wrongful Death Act "creates a new cause of action," it is a right dependent upon, and thus derivative of, a decedent's putative personal injury claim before her death. *Mitchell v. Talley*, 182 N.C. 683, 109 S.E. 882, 884 (1921); *see also* N.C. Gen.Stat. § 28A–18–2 ("When the death of a person is caused by a wrongful act, neglect or default of another, such as would, *if the injured person had lived*, have entitled the injured person to an action for damages therefor . . . ." (emphasis added)); *Wilkerson ex rel. Estate of Wilkerson v. Nelson*, 395 F.Supp.2d 281, 289 (M.D.N.C.2005) ("Thus, the estate's poten-tial for recovery [for wrongful death] is legally derivative of [decedent's] own ability to recover [for personal injury].");  *Brown v. Lumbermens Mut. Cas. Co.*, 285 N.C. 313, 319, 204 S.E.2d 829, 834 (1974) ("Plaintiff's right to recover against his intestate's insurer under the uninsured motorist endorsement is derivative and conditional."); *Edwards*, 87 S.E. at 637 ("[A]lthough the [wrongful death] statute may be considered in some respects as creating a new right of action, it has its foundation in a single wrong . . . ."); *id.* at 636 ("[A]s the foundation of the right of action is the original wrongful injury to the decedent, it has been generally held that the new action is a right dependent upon the existence of a right in the decedent, immediately before his death to have maintained an action for his wrongful injury." (quoting *Michigan Cent. R. Co. v. Vreeland*, 227 U.S. 59, 70, 33 S.Ct. 192, 57 L.Ed. 417 (1913))); *Sorrells v. M.Y.B. Hospitality Ventures*, 108 N.C.App. 668, 424 S.E.2d 676, 678 (1993) ("[A]ny wrongful death action on behalf of the decedent driver is derivative . . . ."), *rev'd on other grounds*, 334 N.C. 669, 435 S.E.2d 320 (1993).

■■■ A comparison of the two complaints at issue here leads to the inescapable conclusion that Mr. Taylor's claim for wrongful death arose out of the same series of transactions and core of operative facts alleged in the 2010 Complaint. All of NSRC's misconduct alleged in the present complaint is alleged in identical fashion in the 2010 Complaint. All of the basic facts in the two cases "are related in time, space, origin, [and] motivation" because no new misconduct is alleged. *Restatement (Second) of Judgments* § 24(2). The only difference is that, in this case, Mr. Taylor alleges that NSRC's tortious conduct also gives rise to a claim under the Wrongful

Death Act.[7]

Moreover, the facts of the two cases stem from the same transaction, and the personal injury claims (considered as survivorship claims after death) would have made "a convenient trial unit" with the wrongful death claims under the *Second Restatement of Judgments* § 24(2). North Carolina law treats Mrs. Taylor's personal injury claims (once a personal representative was substituted) as part of the same transaction as the wrongful death claim. *See Bolick*, 50 S.E. at 690 ("[W]hen the death occurs pending an action for personal injuries, of which the death is the greatest, we think such cause is merged in the cause of action for the death, and that the only remedy under our statute is that given under [the Wrongful Death Act], and that the pending action for the lesser [personal] injuries abates."). This is because North Carolina requires that survivorship and wrongful death claims arising from the same conduct be consolidated for trial, lest one be precluded by a judgment in the other. *Bowen*, 196 S.E.2d at 807; *Alston*, 628 S.E.2d at 831. And even though the cause of action for a survivorship claim is created by a statute different from the one creating the wrongful death claim, this difference in "form" does not undermine the claims' identity in "substance" for res judicata purposes. *Nash Cnty. Bd. of Educ. v.*

*Biltmore Co.*, 640 F.2d 484, 488 (4th Cir. 1981) (noting, in the antitrust context, that "the identity of two actions, as intimately tied together as these two, will not be destroyed in the res judicata context simply because the two suits are based on different statutes," where one cause of action arose from a state antitrust statute and the other by a federal antitrust statute).

Therefore, under the facts of this case, the two lawsuits reflect sufficient identity of their causes of action.[8]

### b. Exceptions to the Same Transaction Test

▮ Mr. Taylor argues that res judicata should not bar the present lawsuit because the wrongful death claim was "not available until a properly appointed Personal Representative was substituted as a party to the prior action." (Doc. 23 at 9–10.) Although claim unavailability is an exception to res judicata, it does not save Mr. Taylor's case.

Generally, a claim that arises out of the same transaction or core of operative facts involved in the earlier suit will be barred, but that is not the case where the claim did not "exist" at the time of the earlier case such that the parties lacked a full and fair opportunity to litigate it. *See Union*

7. For an analogous case, where the defendant's alleged misconduct was the same in both lawsuits, see *Nathan v. Takeda Pharm. Am., Inc.*, 546 Fed.Appx. 176, 178 (4th Cir. 2013) ("As to identity of the causes of action, the alleged wrongdoing underlying Nathan's claims in this case arises from the same facts underlying the Title VII action. Both cases involve the defendants' conduct regarding Nathan's alleged performance difficulties in 2009. In the Title VII Action, Nathan alleged that the defendants' actions were discriminatory and retaliatory; in this case, he alleges that the same actions constituted a conspiracy to defame him. Under these circumstances, we agree with the district court that these

claims arise out of the same transaction or the same core of operative facts."). While unpublished, *Nathan* is nevertheless valuable for its persuasive authority. *See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir.2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

8. No one disputes that Mr. Taylor's loss of consortium claim, brought in both this case and the prior one, are identical.

*Carbide Corp. v. Richards,* 721 F.3d 307, 315 (4th Cir.2013) (citing *Taylor v. Sturgell,* 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008)); *Meekins v. United Transp. Union,* 946 F.2d 1054, 1057 (4th Cir.1991). A claim is deemed to have been previously unavailable in two scenarios. First, "on rare occasions, when a new statute provides an independent basis for relief which did not exist at the time of the prior action, a second action on the new statute may be justified." *Id.* (quoting 18 James Wm. Moore et al., *Moore's Federal Practice,* § 131.22[3] (3d ed.2013)). This exception does not apply to changes in case law, however, which will not generally provide relief from res judicata. *Id.* at 315 n. 5 (citing *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). Second, and more typically, "a new factual development ... gives rise to a fresh cause of action." *Union Carbide Corp.,* 721 F.3d at 315 (citing *Lawlor v. Nat'l Screen Serv. Corp.,* 349 U.S. 322, 328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)).

Analogizing to *Union Carbide,* Mr. Taylor argues that, "[b]ecause the North Carolina Wrongful Death Statute created a new cause of action that was unavailable to the Taylors when they brought their initial claims, res judicata does not bar their subsequent claims." (Doc. 23 at 11.) But he misconstrues *Union Carbide* and makes no showing that his case involves one of those "rare occasions" where a new statute was passed after the first lawsuit, creating a fresh cause of action.

In *Union Carbide,* the plaintiffs had previously sought black lung survivors' benefits, but their claims were dismissed in 2006. 721 F.3d at 310–11. In 2010, Congress amended the United States Code, adding a "fresh cause of action," previously unavailable, that also required proof of different facts from those at issue in the first case. *Id.* at 315. The Fourth Circuit rejected a res judicata defense. The court explained,

> [W]e recognize that the record evidence has not changed since the denial of the original claims and that the only relevant change is one of law.... [T]he statutory change in law provides a previously unavailable basis for relief that justifies the instant claims, since res judicata does not bar claims that the parties have not had a "full and fair opportunity to litigate."

*Id.* (quoting *Taylor v. Sturgell,* 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008)).

*Union Carbide's* holding has no application to this case. The North Carolina General Assembly did not amend the Wrongful Death Act in an intervening period between the two lawsuits involved here. Rather, the law has remained unchanged throughout both actions. Mr. Taylor recognized as much when he attempted to amend the 2010 Complaint to add the wrongful death claim. *See* Proposed Amendment to Complaint for Wrongful Death, *Taylor v. Norfolk S. Ry. Co.,* No. 2:11–cv–60075 (E.D.Pa. Oct. 27, 2011), ECF No. 25–3. Therefore, the intervening law exception does not apply.

The second exception is available when there has been "a new factual development that gives rise to a fresh cause of action." *Union Carbide,* 721 F.3d at 315. *Union Carbide* cited, as an example of such a case, *Lawlor v. Nat'l Screen Serv. Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). Mr. Taylor analogizes his case to the facts in *Lawlor,* arguing that whether two lawsuits involved "'essentially the same course of wrongful conduct' is not decisive" where it gives rise to a new cause of action. (Doc. 23 at 8–9 (quoting *Lawlor,* 349 U.S. at 327, 75 S.Ct. 865).) Again, Mr. Taylor misperceives the exception.

In *Lawlor*, the plaintiffs had filed an antitrust lawsuit in 1942, alleging that the defendants had conspired to monopolize in the distribution of standard accessories by means of exclusive licenses. 349 U.S. at 324, 75 S.Ct. 865. Before trial, the case settled, with the primary defendant agreeing to license these standard accessories to the plaintiffs at specified prices. *Id.* The case was then dismissed with prejudice. *Id.*

Later, in 1949, plaintiffs brought claims under the same antitrust laws, alleging that the defendants had merely used the earlier settlement "to perpetuate their conspiracy and monopoly," as well as alleging that other parties had now joined in the conspiracy, that the primary defendant was not honestly fulfilling its obligations under the settlement agreement, and that the primary defendant was monopolizing in new ways. *Id.* at 324–25, 75 S.Ct. 865. The plaintiffs sought damages for the period "beginning several months after the dismissal of the 1942 complaint." *Id.* The defendants raised res judicata as a defense; the district court agreed and dismissed the case, and the Third Circuit affirmed. *Id.* at 325–26, 75 S.Ct. 865.

The Supreme Court reversed, finding that the two lawsuits were not based on the same cause of action. *Id.* at 327, 75 S.Ct. 865. As Mr. Taylor notes, the Court held that just because "both suits involved essentially the same course of wrongful conduct is not decisive." *Id.* (internal quotation marks omitted). The Court explained that the "conduct presently complained of was all subsequent to the [earlier] 1943 judgment" and that the new complaint also alleged new types of monopolization not present in the first case. *Id.* at 328, 75 S.Ct. 865. Given such facts, the first judgment could not "be given the effect of extinguishing claims which did not even then exist and

which could not possibly have been sued upon in the previous case." *Id.*

The present case is nothing like *Lawlor*. It is not that Mr. Taylor's present lawsuit complains of the same "course" or type of wrongful conduct as the 2010 action; rather, it complains of precisely the same conduct. *Lawlor* articulated its uncontroversial holding by noting that acceptance of the defendants' rule "would in effect confer on [the defendants] a partial immunity from civil liability for future violations." *Id.* at 329, 75 S.Ct. 865. In this case, Mr. Taylor has not alleged that NSRC engaged in any new, unlawful action after dismissal of the 2010 Complaint, so there is no concern that it would gain an unfair advantage.

In reality, the present case is just a disguised collateral attack on the earlier case. When Mrs. Taylor died during the pendency of the first case, the final element of the wrongful death cause of action was met. The wrongful death *cause of action* then accrued and became available, *see Raftery*, 230 S.E.2d at 416, even though the underlying *claimed* tortious conduct remained the same. As the Tenth Circuit explained in a related context:

> [Res judicata] requires a plaintiff to join all claims together that the plaintiff has against the defendant *whenever during the course of the litigation related claims mature* and are able to be maintained. Thus, even if an additional claim does not mature until well after the initial complaint has been filed, the plaintiff nevertheless must seek to amend the complaint to add additional claims as a compulsory claim when the additional claim can be brought.

*Stone v. Dep't of Aviation*, 453 F.3d 1271, 1278–79 (10th Cir.2006); *accord Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 n. 7 (10th Cir.2006) ("[Plaintiff's] lack of any obligation to supplement his com-

plaint with new and independent claims based on facts accruing *after* the complaint was filed should be distinguished from his duty to supplement with claims arising from the same transaction that *matured* (due to completion of an administrative process, for example) after the filing of his complaint." (citing *Stone*, 453 F.3d at 1278–79)).[9]

Once Mr. Taylor filed the notice of death during the prior action, he incurred not an option, but an obligation, to amend his personal injury complaint and substitute himself as personal representative of what necessarily became a survivorship claim, lest the case be dismissed with prejudice as required by Rule 25(a)(1).[10] Mr. Taylor missed the deadline, however, leaving the district court no alternative under Rule 25 but to order a dismissal of the personal injury and loss of consortium claims for a failure to substitute under Rule 25, which is as preclusive as a dismissal for failure to prosecute under Rule 41(b). *See* 18A Charles A. Wright et al., *Federal Practice and Procedure* § 4440 & n. 1 (2d ed.2002). Because the personal injury and loss of consortium claims were dismissed with prejudice, any potential survivorship or wrongful death claim, being based on the same alleged wrong, became res judicata.

For these reasons, Mr. Taylor's claims in the two lawsuits are identical for res judicata purposes, and there is no saving exception.

## 2. Identity of the Parties or Their Privies

The third and final element of res judicata requires an "identity of parties or their privies in the two suits." *Pueschel*, 369 F.3d at 355 (citing *Nash Cnty.*, 640 F.2d at 486). The court must analyze whether the interests of the parties in the first case "are so identified with the interests" of the parties in this case that "representation by one party is representation of the other's legal right." *Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir.2007); *accord State v. Summers*, 351 N.C. 620, 528 S.E.2d 17, 20 (2000). The identity of

---

**9.** In other circuits, the general rule is that "an action need include only the portions of the claim due at the time of commencing that action." 18 Wright et al., supra, § 4409. But courts that apply this rule invariably justify it on the basis that plaintiffs have an opportunity—and not an obligation—to amend or supplement a complaint. *Id.; see, e.g., Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 370 (2d Cir.1997). The Fourth Circuit has not yet spoken on whether it also would follow this rule. *See Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210–11 (4th Cir.2013) ("Ultimately, we do not decide whether the relevant time period for a newly articulated claim to satisfy the exception to res judicata is the point at which the complaint is filed in the previous case—the plaintiff's position—or the entire pendency of that case—the district court's view—because we conclude that res judicata should not apply here for three independent reasons."). But even assuming, without concluding, that the Fourth Circuit would adopt this general rule, the circumstance here is an exceptional one because the justification for the rule would be under-

mined. In this case, Mr. Taylor had not just the "opportunity" to amend his 2010 Complaint when Mrs. Taylor died but an "obligation" to do so lest it be dismissed with prejudice under Rule 25. Where amendment of the complaint is required to avoid dismissal, plaintiffs have an obligation to bring all claims available at the date of amendment. *See, e.g., Salley v. Rendell*, No. Civ. A. 08–132, 2008 WL 1752246, at *8 (W.D.Pa. Apr. 14, 2008) (dismissing complaint on res judicata grounds where plaintiff failed to amend complaint as ordered by court).

**10.** Rule 25(a)(1) provides in pertinent part:

If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

these interests is determined by North Carolina law. *See Harnett*, 800 F.2d at 1313.

In general terms, North Carolina determines privity between parties based on their actual stake in the litigation:

> Whether or not a person was a party to a prior suit must be determined as a matter of substance and not of mere form. The courts will look beyond the nominal party whose name appears on the record as plaintiff and consider the legal questions raised as they may affect the real party or parties in interest.

*King v. Grindstaff*, 284 N.C. 348, 200 S.E.2d 799, 806 (1973) (citations and internal quotation marks omitted). In an action for wrongful death, the "real party in interest" is not the personal representative, who is simply the person permitted to bring the cause of action, but "the beneficiary for whom the recovery is sought." *DiDonato*, 358 S.E.2d at 491. As noted earlier, the beneficiaries under the Wrongful Death Act are the decedent's heirs as "provided in the Intestate Succession Act." N.C. Gen.Stat. § 28A–18–2(a); *accord Cox v. Shalala*, 112 F.3d 151, 155 n. 3 (4th Cir.1997).[11] Mr. Taylor is a beneficiary under that Act, *see* N.C. Gen.Stat. § 29–14, making him not only a representative party but also a real party in interest.

There is no dispute that Mr. Taylor is in privity with himself as to his loss of consortium claims he brought in both the prior and present cases. Those claims are personal to him, and he remains the same plaintiff, in the same capacity, on each claim.

However, Mr. Taylor argues that there is no privity between Mrs. Taylor, on her prior personal injury action, and the beneficiaries on a wrongful death action for the same injuries because, he contends, the actions "are not brought to enforce the same rights." (Doc. 23 at 14.) For support he relies on a non-precedential opinion from the North Carolina Court of Appeals, which explained that an "action for wrongful death is an action created by statute, and distinct from any underlying claims, even the claim upon which the wrongfulness of the death depends." *Udzinski v. Lovin*, 159 N.C.App. 272, 583 S.E.2d 648, 652 (2003) (Elmore, J., writing only for himself), *aff'd*, 358 N.C. 534, 597 S.E.2d 703 (2004).[12] He argues further that the rights remedied by the Wrongful Death Act belong to the decedent's heirs and not to the decedent. Mr. Taylor's arguments are unpersuasive.

Under North Carolina law, a wrongful death claim is derivative of the decedent's personal injury claim. *See Abney*, 493 F.3d at 421 n. 2 ("[I]n North Carolina, a claim for wrongful death 'exists if and only if the decedent could have maintained an action for negligence or some other misconduct if []he had survived.'" (quoting *Nelson*, 541 F.Supp. at 818)). The Wrongful Death Act provides, on its face, that a cause of action only arises where the injured would have had a personal injury claim "if the injured person had lived." N.C. Gen.Stat. § 28A–18–2(a). The actions taken by the decedent during her lifetime can totally bar her heirs' recovery. *See Edwards*, 87 S.E. at

---

11. By contrast, as noted earlier, any recovery on survivorship claims is an asset of the estate. To the extent Mr. Taylor's complaint seeks survivorship damages, there would be privity for those claims because they represent the same legal right Mrs. Taylor had

before she died. *See* N.C. Gen.Stat. § 28A–18–1(a).

12. Judge Elmore wrote the lead opinion, in which no other judge joined. Judge Hunter wrote a separate opinion, concurring in the result only. Judge Bryant dissented.

636–37.[13]   Even though they can recover a wider array of damages, the heirs have interests that are legally dependent on those of the decedent.   As such, decedents are in privity with their heirs on a wrongful death claim because the decedent's representation of her own rights during her lifetime ` constitutes representation of her heirs' rights.

▆▆▆   This conclusion is consistent with the approach articulated by the *Second Restatement of Judgments*, which follows a simple rule that, whenever

> a person has been injured by an act which later causes his death and during his lifetime brought an action based on that act ... [i]f the action resulted in judgment against the injured person, it precludes a wrongful death action by his beneficiaries to the same extent that the person himself would have been precluded from bringing another action based on the act.

*Restatement (Second) 'of Judgments* § 46(1).[14]   Under the *Restatement,* privity of the decedent and her heirs on a wrongful death claim is presumed based on their common relationship to the personal injury judgment.  *See id.* ch. 1. It is also the rule followed in a majority of jurisdictions.  *See Smith,* 275 S.W.3d at 769–74 (collecting cases); *see also, e.g., Thompson v. Wing,* 70 Ohio St.3d 176, 637 N.E.2d 917, 923

(1994) (applying the *Restatement* rule and "hold[ing] that beneficiaries in a wrongful death action are in privity with the decedent").

### 3.  Summary

All three elements of res judicata are met.  Mr. Taylor concedes that the 2010 lawsuit ended in a final judgment on the merits, and the court has determined there is an identity of claims and parties.  The claims of the present lawsuit are therefore precluded by the earlier action.

This result admittedly appears harsh but, as the Supreme Court has concluded, " '[s]imple justice' is achieved when a complex body of law developed over a period of years is evenhandedly applied." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The Court's explanation applies here equally:

> The predicament in which [Plaintiff] finds himself is of his own making. . . . [The court] cannot be expected, for his sole relief, to upset the general and well-established doctrine of res judicata, conceived in the light of the maxim that the interest of the state requires that there be an end to litigation—a maxim which comports with common sense as well as public policy.   And the mischief which

---

13.  *Edwards* made its policy choice explicit. As the North Carolina Supreme Court explained, there is no indication that the General Assembly, in adopting the Wrongful Death Act, intended to permit double recovery, subjecting the wrongdoer "to additional liability when he has made compensation to the injured party in his lifetime in full adjustment of the wrong done him." *Id.* at 637.  Had the court held otherwise, it would have prejudiced the injured party herself, making it more difficult for her to reach a resolution with the tortfeasor during her life.  With the sword of double-liability "hanging over him," the court explained, "[a] wrongdoer would be

little inclined and hardly justified in offering adequate adjustment." *Id.*

14.  The North Carolina Supreme Court has often relied on the *Second Restatement of Judgments* for its res judicata analyses, *see, e.g., Jonesboro · United Methodist Church v. Mullins–Sherman Architects, LLP,* 359 N.C. 593, 614 S.E.2d 268, 271 (2005); *Bockweg v. Anderson,* 333 N.C. 486, 428 S.E.2d 157, 162 (1993); *Thomas M. McInnis & Associates, Inc. v. Hall,* 318 N.C. 421, 349 S.E.2d 552, 559 (1986), including the privity issue, *see Settle By & Through Sullivan v. Beasley,* 309 N.C. 616, 308 S.E.2d 288, 291–92 (1983).

would follow the establishment of precedent for so disregarding this salutary doctrine against prolonging strife would be greater than the benefit which would result from relieving some case of individual hardship.

*Id.* at 401–02, 101 S.Ct. 2424 (quoting *Reed v. Allen,* 286 U.S. 191, 198–99, 52 S.Ct. 532, 76 L.Ed. 1054 (1932)). Mr. Taylor unfortunately missed the Rule 25 deadline he initiated in the prior case, resulting in dismissal of the case with prejudice, and he decided not to appeal that ruling. As a result, the dismissal is res judicata as to the claims of the present lawsuit.

### III. CONCLUSION

For these reasons,

IT IS THEREFORE ORDERED that NSRC's motion for judgment on the pleadings (Doc. 18) be GRANTED, and the case be DISMISSED WITH PREJUDICE.